**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **JOHNNY A. RODRIGUEZ, JR.,** <br> Plaintiff, <br> v. <br> **CITY OF BALCONES HEIGHTS, TEXAS;** <br> **JACK BURTON,** in his official and individual capacities as Mayor Pro Tem; <br> **JIMMY HERNANDEZ,** in his official and individual capacities as City Councilmember, Place 3; <br> **DAVID SELLARS,** in his official and individual capacities as City Councilmember, Place 2; <br> **TRACY EBERSOLE,** in his official and individual capacities as City Councilmember, Place 4; <br> **MOLLY WEAVER,** in her official and individual capacities as City Councilmember, Place 5; <br> **MARIA HERNANDEZ,** in her official and individual capacities as City Administrator; <br> **CYNTHIA TREVINO,** in her official and individual capacities as City Attorney; <br> **ROGER CAVAZOS,** in his official and individual capacities as Chief of Police; and <br> **ROBERT NELMS,** in his official and individual capacities as Assistant Chief of Police, <br> Defendants. | **CIVIL ACTION NO.** <br> _____ <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATIONS OF 42 U.S.C § 1983 – FIRST AMENDEMENT RETALIATION AND PRIOR RESTAINT, FOURTEENTH AMENDMENT DUE PROCESS, AND RELATED CLAIMS

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Johnny A. Rodriguez, Jr., the duly elected Mayor-CEO of the City of Balcones Heights, Texas, brings this action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. What follows is the account of how subordinate city employees and a council majority—having resisted the Mayor's lawful and mandatory oversight of their conduct—used the machinery of municipal government to strip him of his statutory authority, lock him out of City Hall, and threaten him with arrest for attempting to do his job. The ordinances they used to accomplish this are void on their face. The conduct is unconstitutional. This is a civil rights case.

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). *See Bradshaw v. Salvaggio,* No. SA-20-CV-01168-FB (W.D. Tex. Oct. 30, 2020).

4.    Plaintiff demands a jury trial on all issues so triable.

## II.   PARTIES

### A.   Plaintiff

5.      Plaintiff Johnny A. Rodriguez, Jr. is the duly elected Mayor-CEO of the City of Balcones Heights, Texas, a Type A General Law municipality located in Bexar County. As Mayor-CEO, Plaintiff is vested by the Texas Legislature with specific, mandatory statutory duties including serving as chief executive officer, inspecting the conduct of subordinate municipal officers, ensuring laws and ordinances are properly carried out, and causing violations of duty to be prosecuted and punished. **Tex. Loc. Gov't Code §§ 22.037, 22.042.** Plaintiff does not receive monetary compensation for his service as Mayor. Plaintiff is the only candidate on the May 2, 2026 ballot for Mayor of Balcones Heights.

### B.   Defendants

6.      Defendant City of Balcones Heights, Texas is a Type A General Law municipality organized under the laws of the State of Texas, located in Bexar County. At all relevant times, the City acted through its governing body—the City Council—which constitutes the City's final policymaking authority. *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). The City may be served through City Secretary Joe Bravo, 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

7.      Defendant Jack Burton is the Mayor Pro Tem, sued in both his official and individual capacities. Burton voted for and signed both void ordinances restricting the Mayor's powers, signed official City documents that should have borne

the Mayor's signature as chief executive officer—including Resolution No. 2026-08R authorizing the personnel investigation—directed communications to be routed through himself, and acted as the primary operational beneficiary of the unlawful scheme to strip the Mayor's authority. He may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

8.    Defendant Jimmy Hernandez is a City Councilmember, Place 3, sued in both official and individual capacities. Hernandez made the motion to pass Ordinance No. 2026-09, seconded by Defendant Sellars, at the March 9, 2026 Special Called Meeting, voted for Ordinance No. 2026-11 at the March 23 Regular Meeting, and moved to fast-track employment contracts for Police Chief Cavazos, City Administrator Hernandez, and City Secretary Bravo at that same meeting—stating on the record that the express purpose was to protect those employees from the Mayor's oversight. His own admissions confirmed that direction was given in the March 9 Closed Session to select an investigative firm on matters not properly noticed. He may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

9.    Defendant David Sellars is a City Councilmember, Place 2, sued in both capacities, who voted for Ordinance No. 2026-09 at the March 9 Special Called Meeting and for Ordinance No. 2026-11 at the March 23 Regular Meeting. He may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

10.    Defendant Tracy Ebersole is a City Councilmember, Place 4, sued in both capacities, who voted for Ordinance No. 2026-09 at the March 9 Special Called

Meeting and voted against Ordinance No. 2026-11 at the March 23 Regular Meeting. He may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

11.     Defendant Molly Weaver is a City Councilmember, Place 5, sued in both capacities, who voted for Ordinance No. 2026-09 at the March 9 Special Called Meeting and voted against Ordinance No. 2026-11 at the March 23 Regular Meeting. She may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

12.     Defendant Maria Hernandez is the City Administrator, sued in both capacities. Hernandez personally brought the lost police equipment complaint to Plaintiff's attention, asked Plaintiff to help her hold Police Chief Cavazos accountable, then reversed course on March 2, 2026—issuing a directive to insulate Cavazos from mayoral oversight on the same day that complaints against Plaintiff first emerged. She subsequently enforced the unlawful lockout, personally directed Plaintiff's removal from his March 12, 2026 WOTA meeting under threat of arrest, and transmitted the void ordinance to city employees with isolation directives, while being permitted to remain in the March 9 Closed Session from which Plaintiff was excluded. She may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

13.     Defendant Cynthia Trevino is the City Attorney, sued in both capacities. Trevino personally presented undisclosed allegations against Mayor Rodriguez to the Council in the March 9 Closed Session from which the Mayor was excluded; personally transmitted Ordinance No. 2026-09 to city employees with isolation directives; acknowledged in writing on March 10 that a procedural mistake may have been made yet advised continued enforcement; received explicit written notice on

March 14, 2026 that the ordinances were void *ab initio* and that federal litigation was imminent, yet took no remedial action and continued directing enforcement; and drafted Ordinance No. 2026-11 citing Texas Local Government Code § 22.072—a provision that by its own terms applies only to officers whose duties are not specified by the code, while § 22.042 expressly specifies the Mayor's duties. She is represented in her individual capacity by separate personal counsel demonstrating her awareness of her personal legal exposure. She may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

14.    Defendant Roger Cavazos is the Chief of Police, sued in both capacities. Cavazos was hired by Plaintiff to reform the police department but immediately cultivated alliances with council members to secure a five-year employment contract against Plaintiff's explicit instructions, cultivated a factional relationship with the council majority that would be used against the Mayor, refused to comply with formal oversight directives in Plaintiff's presence, and on March 12, 2026, participated in the physical exclusion of Plaintiff from city premises under threat of arrest. He may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

15.    Defendant Robert Nelms is the Assistant Chief of Police, sued in both capacities, who personally participated in the March 12, 2026 confrontation directing Plaintiff to leave city premises under threat of arrest. He may be served at 3300 Hillcrest Drive, Balcones Heights, Texas 78201.

16.    At all times relevant hereto, all Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

## III.   FACTUAL BACKGROUND

### A.   Mayor Rodriguez's Statutory Authority—The Legislature Commands, the Council Cannot Prohibit

17.   Plaintiff Johnny A. Rodriguez, Jr. is the duly elected Mayor-CEO of the City of Balcones Heights—a small, fully landlocked enclave city of approximately 3,296 residents located entirely within the boundaries of San Antonio, Texas. He was elected by the citizens of Balcones Heights, serves without monetary compensation, and is the only candidate on the May 2, 2026 mayoral ballot.

18.   The statutory authority of the Mayor of a Type A General Law municipality flows directly and exclusively from the Texas Legislature—not from the City Council. Unlike home rule cities, which possess broad implied powers, Type A general law cities operate under the inverse principle: the council may exercise only those powers the Legislature has expressly granted. **Tex. Loc. Gov't Code § 51.001.** The Legislature has vested in the Mayor of a Type A city specific mandatory duties that the council cannot eliminate by ordinance: the Mayor *shall* actively ensure that all laws and ordinances are enforced; the Mayor *shall* inspect the conduct of each subordinate municipal officer; and the Mayor *shall* cause any negligence, carelessness, or other violation of duty to be prosecuted and punished. **Tex. Loc. Gov't Code § 22.042(a)-(b)** (emphasis added). These are mandatory commands. Mayor Rodriguez cannot lawfully choose not to inspect subordinate officers—he is legally obligated to do so. The ordinances challenged in this case do not restrict a discretionary power. They prohibit the Mayor from performing duties the Legislature

has commanded him to perform. **Tex. Loc. Gov't Code § 51.012** voids any ordinance inconsistent with state law. An ordinance that forecloses compliance with state law is inconsistent with state law as a matter of logical necessity.

## B.    Police Chief Cavazos — The Hiring, the Contract End-Run, and the Faction

19.    Plaintiff hired Defendant Roger Cavazos as Police Chief of the City of Balcones Heights with the specific intention of reforming and rebuilding the police department. During the hiring process, Cavazos was asked whether there was anything in his background that would be an embarrassment to the City; he answered no. He was also specifically asked not to engage in direct lobbying of council members, as that conduct had caused problems with the previous police chief; he agreed. These representations were false, as Plaintiff would later discover. At the time of his hiring, Cavazos also represented that he did not know any current city staff—positioning himself as a neutral outsider who could bring fresh, independent leadership. The agreement at the time of hiring was clear: no employment contract would be issued immediately. No prior police chief of Balcones Heights had ever held a formal employment contract. With the City having just balanced its budget, Plaintiff told Cavazos to wait before seeking a contract. Roger Enriquez, serving at the time as both the Council-appointed Interim City Administrator and Chair of the Economic Development Corporation, was present when this agreement was reached.

20.    Cavazos did not wait, and he did not keep his agreement about council lobbying. Shortly after his hiring, Cavazos began cultivating personal relationships with Councilmembers Burton, Sellars, Jimmy Hernandez, and Ebersole, arranged to

have a formal employment contract placed on the council agenda without Plaintiff's knowledge or involvement, and lobbied the council members to approve it—in direct violation of his express agreement not to do so. The council approved Cavazos a five-year employment contract with a one-year probationary period at $120,000 annually—$10,000 more than Plaintiff had intended—with exceptional benefits that no prior city employee had received. When Plaintiff confronted Cavazos about having gone around him to the council, Cavazos responded: "See, I know how to negotiate, mayor. I know exactly what I'm doing." Plaintiff has since confirmed that Cavazos was terminated from a prior position at a constable's office—information not disclosed during the hiring process and directly contrary to Cavazos's representation that there was nothing embarrassing in his background.

21.    The relationship between Plaintiff and Cavazos deteriorated from that point. The pattern of going around the Mayor to the council majority continued. Cavazos lobbied council members—against the explicit objections of both Plaintiff and City Administrator Hernandez—to place a controversial immigration enforcement policy (287(g)) on the council agenda; it passed, generating significant media backlash and public controversy that Plaintiff was required to address publicly, while Cavazos refused to issue any statement until the Mayor and Hernandez directed him to. At a subsequent council meeting, Cavazos again lobbied Councilmembers Burton, Jimmy Hernandez, and Ebersole—days before the meeting and without the Mayor's knowledge—to approve a nearly $500,000 purchase of a Records Management and Computer-Aided Dispatch (RMS/CAD) system based on

exploratory correspondence lacking binding agreements or verified cost-sharing commitments from the three governing bodies whose participation was the asserted basis for the system's cost justification. Plaintiff publicly objected to the purchase at the council meeting. In each of these instances, Cavazos was aligned with the council faction, not with the executive authority of the office that had hired him. As Plaintiff continued to exercise his § 22.042 oversight responsibilities—requesting operational data, seeking accountability for city resources, and evaluating departmental performance—Cavazos's resistance to that oversight became increasingly apparent. It was in this context that City Administrator Maria Hernandez began raising concerns about Cavazos's conduct directly with Plaintiff.

## C. City Administrator Hernandez Asks the Mayor to Hold the Police Chief Accountable

22. Beginning in February 2026, City Administrator Maria Hernandez—not Plaintiff—brought the mounting problems with Cavazos to Plaintiff's attention. Hernandez reported that four police ticket-writing equipment units valued at approximately $12,000 in taxpayer-funded assets had gone missing under Cavazos's watch, that unexplained expenditures were occurring within the police budget, and that the department was not meeting its operational obligations. Hernandez also reported that Cavazos had been persistently pressuring her to relocate city administrative staff out of the Justice Center, citing Criminal Justice Information Services (CJIS) security concerns, and had repeatedly demanded to know when the relocation would occur—to the point that she complained to Plaintiff about it constantly. Hernandez told Plaintiff that she had been unable to hold Cavazos

accountable through her own authority—that she was, in her own words to Plaintiff, afraid of him—and she asked Plaintiff to back her up in confronting Cavazos directly. Plaintiff agreed. This was the City Administrator asking the Mayor-CEO to exercise his § 22.042(b) statutory oversight authority on her behalf.

23. Acting at City Administrator Hernandez's request and pursuant to his mandatory statutory duty, Plaintiff met with Cavazos on March 3, 2026 at 3:30 p.m. in Hernandez's office, with Hernandez present. At that meeting, Hernandez presented Cavazos with a written directive in her capacity as City Administrator—addressing the missing equipment, establishing oversight requirements, and imposing accountability measures—and asked Cavazos to sign it. Cavazos refused to sign the directive in Plaintiff's presence. He cited his five-year employment contract as his basis for non-compliance. Plaintiff then issued his own formal written directive dated March 4, 2026, addressed to both Cavazos and Hernandez, demanding an immediate investigation into the missing equipment, establishing investigation milestones, and requiring an interim report within seven working days. Cavazos did not respond. Within days, the same City Administrator who had asked Plaintiff to help her hold Cavazos accountable had reversed course entirely—and the complaints against Plaintiff had emerged.

### D. March 2, 2026 — The Pivot

24. On or about March 2, 2026, two things happened simultaneously that the public record now confirms. First, City Administrator Maria Hernandez issued a directive to Police Chief Cavazos purporting to place him under her direct supervisory

authority—a reversal of her prior position and an effort to insulate Cavazos from the mayoral oversight she had herself requested. Second, that same day, the City Administrator was first made aware of the complaints and allegations against Mayor Rodriguez that would become the basis for the March 9 retaliatory special meeting. Resolution No. 2026-08R expressly states that "on or about March 2, 2026, the City Administrator was made aware of certain concerns, complaints and allegations from City Employees against the Mayor." The simultaneous emergence of the insulation directive and the first-known complaints on March 2 establishes that the complaint-collection process and the administrative maneuvering to protect Cavazos were coordinated from the outset. What is most telling is what Hernandez did not do: despite being in possession of these complaints against Plaintiff on March 2, 2026, she did not disclose them to Plaintiff at the March 3, 2026 meeting she had arranged with Cavazos—a meeting held for the explicit purpose of holding Cavazos accountable at Plaintiff's assistance. She sat through that meeting, watched Plaintiff confront Cavazos on her behalf, went through the motions of holding the Chief accountable, and said nothing. The inference is inescapable: Hernandez had already decided to use those complaints against the Mayor; the March 3 meeting was theater.

25.        At the time of these events, Plaintiff was also actively engaged in one of the City's most significant ongoing financial matters: the Balcones Heights Economic Development Corporation's 45.7% ownership stake in the Wonderland of the Americas shopping mall, acquired in November 2021 for $5.4 million financed through a 20-year loan with a balloon payment due approximately 2031. Anticipated

annual distributions from the investment had largely ceased. Plaintiff had been working through the EDC to divest the City's stake or otherwise resolve the situation. Roger Enriquez, serving as Chair of the EDC board, testified publicly at the March 23 meeting that real progress had been made toward resolving the WOTA investment under Plaintiff's leadership. The lockout has prevented Plaintiff from attending any EDC meeting since March 2026.

### E.    March 3–4, 2026—The Mayor Performs His Mandatory Statutory Duty

26.    On March 3, 2026, Plaintiff met with Police Chief Cavazos and City Administrator Hernandez and personally confronted Cavazos about the missing equipment—the mandatory performance of his § 22.042(b) duty to inspect subordinate officers. Cavazos refused to comply. The following day, March 4, 2026, Plaintiff issued a formal written directive to both Cavazos and Hernandez demanding an immediate investigation into the disappearance of the four police ticket-writing equipment units, establishing an investigation timeline, and requiring an interim report within seven working days. This was not a discretionary act—it was the performance of a mandatory statutory duty. Texas Local Government Code § 22.042(b) commands that the Mayor "shall inspect the conduct of each subordinate officer and shall cause any negligence, carelessness, or other violation of duty to be prosecuted and punished." Plaintiff had no legal choice but to act. A mayor who learns of potential misconduct involving the loss of taxpayer assets and fails to investigate has violated his mandatory statutory obligations. Six days after the March 3 confrontation, five days after the March 4 directive, the City Council responded by

enacting an ordinance prohibiting the Mayor from communicating with the very subordinate officers he is required by state law to inspect. That is the retaliatory act at the center of this case: the Council punished the Mayor for doing precisely what the Texas Legislature commanded him to do. The March 3 meeting and the March 4 directive also constituted speech and petitioning activity on a matter of significant public concern—stewardship of taxpayer-funded assets—protected by the First Amendment.

### F.    March 9, 2026 — The Special Called Meeting

27.    On March 9, 2026—six days after the March 3 confrontation and five days after Plaintiff's March 4 oversight directive—the City Council held a Special Called Meeting. The publicly posted agenda did not disclose that any ordinance or resolution restricting the Mayor's powers and duties would be considered at that meeting. The agenda did not identify Mayor Rodriguez by name as the subject of any charge or complaint to be heard. The public was given no notice of the legislative restriction that would be enacted that evening. Plaintiff was not informed that any action concerning his authority was being considered.

28.    At the outset of the March 9 meeting, Mayor Rodriguez informed those present that the purpose of the special meeting was to address a police department radio grant. The radio grant discussion consumed the open session. Following the grant discussion, the Mayor acknowledged on the record that "another item came up we got to take care of as well" before the council moved into closed session. *City of Balcones Heights Special Council Meeting* (Mar. 9, 2026), *available at*

youtube.com/watch?v=rza83T72KKw, at 22:05–22:13. Plaintiff was not informed in advance of what this "other item" was, nor was the public given any notice of its substance.

29.     The Council entered closed session at 6:24 p.m. Plaintiff was excluded. Before being excluded, he was not provided with the specific allegations against him, the identity of any complainants, copies of any written complaints, the identity of any witnesses, or any of the supporting materials subsequently presented to the Council in his absence. City Administrator Maria Hernandez—the same administrator who had asked Plaintiff to help hold Cavazos accountable and who had then reversed course on March 2—was permitted to remain in the closed session while Plaintiff was excluded.

30.     The Council reconvened in open session at 8:37 p.m. Councilmember Hernandez moved to approve and adopt Resolution No. 2026-07-R, which would remain in effect until the personnel investigation was completed or further resolution by the City Council. Councilmember Sellars seconded the motion. The word "ordinance" was never used by any speaker during the open session. The motion passed 5-0, with all five Councilmembers voting in favor. The certified minutes of the March 9, 2026 Special Called Meeting, approved by the Council at the March 23, 2026 Regular Meeting, confirm this account.[1]

---

[1] Under Texas Local Government Code § 22.037(a), the mayor of a Type A General Law city may vote only to break a tie; all five aldermen having voted in favor, no tie existed and no legally cognizable mayoral vote was available to Rodriguez.

31.    The following day, March 10, 2026, City Attorney Cynthia Trevino transmitted to Plaintiff a document titled Ordinance No. 2026-09—not a resolution. Trevino's transmittal email acknowledged that the motion may have been for a resolution but the document was in the form of an ordinance, and that the City Council would "take any corrective action, as needed, at its next meeting." This written acknowledgment from the City's own attorney confirms that the instrument enacted at the March 9 meeting did not match the motion made—an independent procedural defect rendering the action voidable under the Texas Open Meetings Act ("TOMA"), in addition to its facial invalidity under state law.

32.    Ordinance No. 2026-09, in its operative Exhibit "A," Section (B), purported to restrict the Mayor's powers by: (a) prohibiting any direct communication with city staff, consultants, or the City Attorney without express written City Council consent; (b) requiring all mayoral communications to be routed through Mayor Pro Tem Burton; (c) restricting the Mayor's physical presence at City Hall to windows of thirty (30) minutes before and thirty (30) minutes after each **council meeting**; and (d) prohibiting the Mayor from taking any adverse action against city officers or employees without City Council consent. These restrictions directly contradict and are inconsistent with **Tex. Loc. Gov't Code §§ 22.042(a) and (b),** and are therefore void. **Tex. Loc. Gov't Code § 51.012.**

33.    The access bar warrants particular attention. Because council meetings are held approximately once per month, the ordinance's effect is not to limit the Mayor's access to City Hall—it is to prohibit it entirely, with a narrow monthly

exception. On every ordinary working day, the elected chief executive officer of the City is not permitted to enter the building he is charged by state law with overseeing. He cannot inspect city facilities, communicate with city staff, retrieve his official mail, attend EDC meetings, or perform the day-to-day functions of his office. The practical effect of the ordinance is not a restriction on mayoral authority. It is *de facto* removal from office while leaving the title in place.

### G. The Physical Lockout — Beyond Even the Void Ordinance

34. Following the passage of Ordinance No. 2026-09, Plaintiff's building entry access card was deactivated and his parking access code was deactivated. These acts—physical deactivation of the Mayor's access credentials—are not authorized by any provision of Ordinance No. 2026-09 or by any other valid legal authority. The void ordinance imposed time-window restrictions on presence; it did not authorize the deactivation of physical access credentials. The lockout exceeded the scope of even the void ordinance.

35. Plaintiff's official City mailbox—containing his official correspondence, meeting agendas, and materials related to his duties as Mayor-CEO—is located in a hallway within City Hall from which he has been excluded. Since the lockout began, Plaintiff has been unable to retrieve his official mail or agenda materials.

### H. March 12, 2026—The WOTA Meeting Confrontation

36. On March 12, 2026, Plaintiff was attending a meeting with Wonderland of the Americas (WOTA) developers and investors, with Roger Enriquez present in his capacity as Chair of the Economic Development Corporation. This meeting was

directly related to Plaintiff's ongoing efforts, as Mayor-CEO, to resolve the City's $5.4 million EDC investment. During this meeting, Defendant Maria Hernandez intervened, contacting Defendants Cavazos and Nelms and directing them to require Plaintiff to leave. Cavazos and Nelms appeared and informed Plaintiff he was not authorized to be on the premises, threatening him with arrest if he refused to leave. This was Plaintiff's first direct confrontation with the lockout being enforced by sworn law enforcement. Plaintiff's parking area access was confirmed deactivated at or around this time.

### I.    March 12, 2026—The Arrest Threat

37.    On March 12, 2026, as the WOTA developers meeting was concluding, Defendant Cavazos and Defendant Nelms physically approached Plaintiff on city premises and informed him he was not authorized to be there. They stated that if he did not leave, he would be arrested. Plaintiff verbally notified Defendants Cavazos and Nelms that they were enforcing a defective and illegal ordinance and that their conduct violated his constitutional rights. His objection was disregarded. Plaintiff asserted his authority, stated he had the right to be present on city premises to perform his official duties, and proceeded to a conference room on the second floor to conduct the WOTA developer meeting. In direct response, sworn law enforcement officers locked all doors to the restrooms, hallways, and administrative offices—physically confining the elected Mayor-CEO of the City within a single room and denying him access to the building's common areas. The same tactic was employed at the EDC meeting downstairs, where all hallway access was similarly locked. Plaintiff

ultimately left the premises. This escalating sequence—arrest threat, refusal to comply, physical confinement through locked doors—demonstrates that the lockout was being enforced by any means available to sworn law enforcement operating under the void ordinance.

38. The meeting Defendants disrupted on March 12, 2026 was a WOTA developers and investors meeting—not a City Council meeting. Ordinance No. 2026-09—even accepting for purposes of argument that it were valid, which Plaintiff expressly denies—bars the Mayor from City Hall at all times, with one narrow exception: the thirty-minute windows before and after a council meeting. A WOTA investors meeting and an EDC meeting are not council meetings. Defendants Cavazos and Nelms therefore threatened to arrest the elected Mayor-CEO for being present on premises at a time when even the void ordinance's own terms did not prohibit his presence.

39. Plaintiff immediately left the premises. Since the March 12, 2026 confrontation, Plaintiff has entered City Hall on only one occasion—the March 23, 2026 Regular City Council Meeting. Outside that window, Plaintiff has not attempted to reenter at any other time because of a well-founded, objectively reasonable fear of arrest by sworn law enforcement officers acting under color of state law. This is not a theoretical chill—it is an ongoing, documented, concrete suppression of a duly elected official's ability to exercise his constitutional and statutory functions on every day that is not a council meeting day.

## J.   The Communication Ban and Employee Isolation

40.    Defendants Hernandez and Trevino transmitted Ordinance No. 2026-09 to city employees with directions that all communications with the Mayor must be routed through Mayor Pro Tem Burton. All direct communications from city employees to Plaintiff ceased as a result. The Mayor no longer receives routine correspondence, notifications, or information about city operations he is statutorily required to oversee.

41.    Plaintiff is informed and believes that Police Chief Cavazos directed a sergeant to interview city employees to solicit potential complaints against Mayor Rodriguez—a proactive effort to manufacture additional adverse material concurrent with and in furtherance of the retaliatory scheme.

## K.    Usurpation of Mayoral Document-Signing Authority

42.    At the March 23, 2026 Regular City Council Meeting, Mayor Rodriguez was permitted to sign one proclamation. All other official City documents from that meeting—ordinances, resolutions, contracts, and instruments—that would ordinarily require the Mayor's signature were instead signed by Mayor Pro Tem Jack Burton with Burton's signature block substituted for the Mayor's. Resolution No. 2026-08R— the resolution authorizing the personnel investigation into the Mayor himself—was signed by Burton. No valid ordinance or provision of state law authorizes this substitution. Because the ordinances purporting to authorize this conduct are void ab initio, any instruments, documents, or official actions signed by Burton in the Mayor's stead are likewise void and without legal effect.

## L.    The March 20, 2026 Special Meeting Sabotage

43.    Between the March 9 and March 23 meetings, Plaintiff exercised his statutory authority to call a Special Meeting of the Governing Body for March 20, 2026, to address the legality of Ordinance No. 2026-09 and to seek its rescission. The agenda posted for that special meeting contained a day-of-the-week error—listing "Thursday" for a meeting scheduled on Friday, March 20, 2026. As a result, the meeting was canceled. Whether or not the error was intentional, its effect was to cancel the only executive remedial action available to Plaintiff before the March 23 meeting.

## M.    March 23, 2026—The Council Doubles Down and Secures the Faction

44.    At the March 23, 2026 Regular City Council Meeting, the Council majority passed Ordinance No. 2026-11, which purported to "ratify" Ordinance No. 2026-09 and impose additional temporary restrictions. The Council simultaneously enacted Resolution No. 2026-08R authorizing an investigation by The Austin Institute, LLC—signed by Burton, not Rodriguez. The Austin Institute, LLC has a status of Forfeited existence with the Texas Secretary of State, a status it has held since 2020.

45.    Ordinance No. 2026-11 is independently void for multiple reasons. First, a void act cannot be ratified. Second, the ordinance's own recitals cite **Texas Local Government Code § 22.072** as authority—but § 22.072 applies only to officers "whose duties are not specified by this code." Section 22.042 expressly specifies the Mayor's duties. The City's own ordinance cites a provision that, on its own terms,

cannot apply to the office of Mayor. Third, Ordinance No. 2026-11 is subject to the same TOMA notice deficiencies as its predecessor.

46.     As of the date of this Complaint, the investigation by The Austin Institute, LLC has not commenced. Plaintiff has raised conflict of interest objections to the process. He has not been provided the written complaints against him, the identities of all complainants, or defined threshold criteria for what conduct triggered these restrictions.

47.     At the same March 23, 2026 meeting where the council passed Ordinance No. 2026-11—stripping the Mayor's oversight authority for the second time—the council also voted to waive the probationary period and fast-track employment contracts for Police Chief Cavazos, City Administrator Hernandez, and City Secretary Bravo. Councilmember Jimmy Hernandez stated on the record, in the open session of that meeting, that the express purpose of fast-tracking these contracts was to protect those employees from the Mayor—to ensure that if any of them were to be terminated, it would require a council majority vote rather than being "left to one individual." The same meeting that stripped the Mayor's mandatory oversight authority simultaneously secured the employment of the subordinate officers whose complaints had generated that authority-stripping. This was not coincidence. It was the other half of the scheme, stated openly on the record by one of the defendants.

## N.     Ongoing Harm

48.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer: (a) complete exclusion from City Hall and municipal

facilities due to reasonable fear of arrest; (b) inability to communicate directly with city staff, the City Attorney, or city consultants in performance of statutory duties; (c) inability to retrieve official mail or access official correspondence; (d) usurpation of his document-signing authority as chief executive officer; (e) severe reputational harm from the public nature of the retaliatory conduct; (f) emotional distress, mental anguish, humiliation, and dignitary harm; (g) ongoing deprivation of the citizens of Balcones Heights of the effective governance of their duly elected Mayor-CEO; (h) additional reputational harm from false complaint allegations published by Councilmember Jimmy Hernandez in the City's April 2026 newsletter; (i) the physical obliteration of the Mayor's designated parking space nameplate—a public act of institutional humiliation demonstrating Defendants' ongoing effort to eliminate any visible recognition of Plaintiff's authority; (j) inability to manage or oversee implementation of a $250,000.00 federal grant awarded to the City of Balcones Heights through the office of Congressman Joaquin Castro for a senior citizens community center—a grant applied for by Plaintiff and Roger Enriquez—the disbursement and management of which has been entirely suspended during Plaintiff's lockout, with Plaintiff unable to determine where the funds have been deposited or whether any action has been taken toward implementation; and (k) cancelation of at least one scheduled EDC meeting due to Plaintiff's inability to attend as a direct consequence of the ongoing lockout.

## IV.    LEGAL FRAMEWORK

49.    42 U.S.C. § 1983 provides a federal remedy for the deprivation, under color of state law, of rights secured by the Constitution or laws of the United States. All Defendants acted under color of state law at all relevant times.

50.    Municipal liability under § 1983 attaches when a municipal employee commits a constitutional violation pursuant to a municipal policy or custom. *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). The City Council is the City's final policymaker. *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986). The void ordinances are official City policy and form the basis for *Monell* liability.

51.    The First Amendment prohibits government officials from retaliating against individuals for engaging in constitutionally protected activity. *Hartman v. Moore,* 547 U.S. 250, 256 (2006). Elected officials are afforded at least the same First Amendment protection as private citizens. *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966); *Jenevein*, 493 F.3d at 558 (holding that the *Pickering-Garcetti* framework does not govern elected officials' speech); *see also Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 476 (2022) ("The First Amendment surely promises an elected representative . . . the right to speak freely on questions of government policy"); *Rangra v. Brown*, 566 F.3d 515, 522 (5th Cir. 2009), *vacated on reh'g en banc on mootness grounds*, 584 F.3d 206 (5th Cir. 2009). The Supreme Court confirmed in 2024 that the First Amendment prohibits government officials from taking retaliatory adverse action. *Gonzalez v. Trevino,* 602 U.S. 653 (2024).

52.    The structural invalidity of the challenged ordinances under Texas law is not a close question. Texas law distinguishes sharply between home rule

municipalities, which possess broad implied powers, and Type A general law municipalities, which possess only the powers the Legislature has expressly granted. TEX. LOC. GOV'T CODE § 51.001*; City of Beaumont v. Bouillion,* 896 S.W.2d 143, 147 (Tex. 1995). Every act of the governing body of a Type A general law city must trace its authority to an express legislative grant. The ordinances purport to draw their authority from § 22.072, which authorizes the council to prescribe duties of officers "whose duties are not specified by this code." But § 22.042 expressly specifies the Mayor's duties. Section 22.072 cannot apply to the office of Mayor on its own terms. There is no other statutory foundation for the challenged ordinances. Moreover, even if § 22.072 applied, the power to "prescribe" duties cannot extend to eliminating mandatory duties the Legislature has already imposed through § 22.042. An officer who inspects a subordinate as § 22.042(b) commands will be arrested under these ordinances. An officer who obeys the ordinances will violate state law. Section 51.012 voids any ordinance inconsistent with state law. An ordinance that makes compliance with state law impossible is inconsistent with state law as a matter of logical necessity.

# V.   CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983
### FIRST AMENDMENT RETALIATION
### (Against All Defendants)

53.   Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

54.    **Legal Standard.** To establish First Amendment retaliation under § 1983: (1) protected activity; (2) adverse action causing injury that would chill a person of ordinary firmness; and (3) substantial motivation by the protected activity. The *Garcetti* limitations on public employee speech do not apply to elected officials. *See Jenevein v. Willing,* 493 F.3d 551, 558 (5th Cir. 2007) (holding the *Pickering-Garcetti* framework is not the appropriate lens for analyzing elected officials' speech); *see also Rangra,* 566 F.3d at 522 (panel's reasoning that elected officials' speech is full, robust, and analogous to that afforded citizens in general endorsed by subsequent district courts); *Bradshaw v. Salvaggio,* No. SA-20-CV-01168-FB (W.D. Tex. Oct. 30, 2020). Municipal liability requires a policy or custom as the moving force. *Monell,* 436 U.S. 658.

55.    **Protected Activity.** At all relevant times, Plaintiff engaged in constitutionally protected activity, including:

(a)    His March 4, 2026 formal written directive demanding an investigation into the disappearance of approximately $12,000 in taxpayer-funded police equipment—the mandatory performance of his § 22.042(b) duty and protected speech on a matter of significant public concern;

(b)    His public statements at City Council meetings challenging the Council majority's conduct, questioning the legal basis for restrictions on his authority, demanding disclosure of the allegations against him, and reading actual emails into the public

record at the March 23 meeting to rebut inaccurate characterizations by the City Administrator;

(c)   His March 10, 2026 formal written demands for clarification of the legal authority for the challenged ordinances; and

(d)   His exercise of statutory authority to call a Special Meeting of the Governing Body to challenge the legality of Ordinance No. 2026-09 and seek its rescission.

56.   **Adverse Actions.** Defendants took the following adverse actions, each of which would chill a person of ordinary firmness from continuing in protected activity, and which have in fact chilled Plaintiff:

(a)   Defendants Burton, Jimmy Hernandez, Sellars, Ebersole, and Weaver enacted Ordinance No. 2026-09 at the March 9, 2026 Special Called Meeting—barring the Mayor from City Hall except during narrow monthly windows, prohibiting direct communication with city staff without Council consent, routing all mayoral communications through Burton, and prohibiting adverse employment actions without Council consent, all in direct contravention of Texas Local Government Code § 22.042;

(b)   Defendants Maria Hernandez and Cavazos deactivated Plaintiff's building entry access card and parking access code—conduct not authorized by the void ordinance's own text—and Defendant Maria Hernandez directed Defendants Cavazos and Nelms to

confront and expel Plaintiff from his March 12, 2026 WOTA meeting under threat of arrest;

(c)    Defendants Trevino and Maria Hernandez transmitted Ordinance No. 2026-09 to city employees with directives that all communications with the Mayor be routed through Mayor Pro Tem Burton, causing a complete cessation of direct communications. Defendant Trevino did so while acknowledging procedural defects in writing—and continued directing enforcement after receiving explicit written notice on March 14, 2026 that the ordinances were void ab initio and federal litigation was imminent;

(d)    Defendants Cavazos and Nelms on March 12, 2026, intervened in Plaintiff's WOTA developers and investors meeting and threatened to arrest him if he did not leave. Plaintiff verbally notified Cavazos and Nelms that they were enforcing a defective and illegal ordinance violating his constitutional rights; this objection was disregarded. The threat had no valid legal basis even by reference to the void ordinance's own text, as a WOTA developers and investors meeting is not a council meeting;

(e)    Defendant Burton signed Resolution No. 2026-08R and all other official City documents at the March 23 meeting with his

signature block substituted for Plaintiff's, usurping Plaintiff's document-signing authority as chief executive officer; and

(f)    Defendants Burton, Jimmy Hernandez, and Sellars enacted Ordinance No. 2026-11 at the March 23 meeting purporting to ratify a void ordinance, and simultaneously voted to fast-track employment contracts for Police Chief Cavazos, City Administrator Hernandez, and City Secretary Bravo—with Councilmember Hernandez stating on the record that the express purpose was to protect those employees from the Mayor. Councilmembers Weaver and Ebersole voted against Ordinance No. 2026-11.

57.    **Chilling Effect.** Since March 12, 2026, Plaintiff has entered City Hall on only one occasion. He has not attempted to reenter at any other time because of a well-founded, objectively reasonable fear of arrest by sworn law enforcement officers. The arrest threat has chilled Plaintiff from attending EDC meetings, inspecting city operations, communicating with city employees, and performing the day-to-day executive functions of his elected office.

58.    **Causation.** The adverse actions were substantially motivated by Plaintiff's protected activity, established by multiple independent grounds: (a) the six-day interval between the March 3 confrontation with Cavazos and the March 9 special meeting—and the five-day interval between the March 4 formal directive and that meeting; (b) the coordinated simultaneous emergence on March 2, 2026 of both

the insulation directive and the first-known complaints; (c) the self-interested nature of the complainants—subordinate employees subject to the Mayor's mandatory § 22.042(b) oversight who stood to lose their positions if that oversight continued, and whose contracts were fast-tracked at the very meeting that stripped the Mayor's authority; and (d) Councilmember Hernandez's on-the-record statement at the March 23 meeting that the purpose of fast-tracking the employee contracts simultaneously with Ordinance 2026-11 was expressly to protect those employees from the Mayor. That is not circumstantial evidence of retaliatory motive—it is direct evidence, stated openly by one of the defendants.

59.    **Municipal Liability.** The City of Balcones Heights is liable under *Monell* because: (a) the City Council is the City's final policymaking authority; (b) the retaliatory conduct was carried out pursuant to official City policy—the void ordinances enacted by that body; and (c) the lockout, arrest threat, communication ban, document-signing usurpation, and employee contract fast-tracking were each carried out pursuant to and in implementation of those official policies.

60.    **Individual Defendant Liability.** Each individual Defendant personally participated in the First Amendment retaliation as identified above. Defendant Trevino personally participated through: presenting undisclosed allegations to the Council in the March 9 Closed Session; transmitting the void ordinances with enforcement directives; acknowledging procedural defects in writing while continuing enforcement; receiving explicit written notice on March 14, 2026 that the ordinances were void *ab initio* and taking no remedial action; and drafting

Ordinance No. 2026-11 citing a statutory provision that by its own terms cannot apply to the Mayor's office. These are implementation acts, not legal advice.

61.    **Damages.** As a direct and proximate result of the foregoing, Plaintiff has suffered reputational harm, emotional distress, mental anguish, humiliation, dignitary harm, and ongoing deprivation of his constitutional rights. Plaintiff is entitled to compensatory damages, nominal damages, punitive damages against individual Defendants in their personal capacities, injunctive and declaratory relief, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II: 42 U.S.C. § 1983
## FIRST AMENDMENT PRIOR RESTRAINT
### (Against All Defendants)

62.    Plaintiff incorporates all preceding paragraphs.

63.    At all relevant times, all Defendants acted under color of state law. In enacting, transmitting, and enforcing the void ordinances, Defendants imposed impermissible prior restraints on Plaintiff's First Amendment rights to speak, petition, and assemble, in violation of 42 U.S.C. § 1983.

64.    **Prior Restraint Doctrine.** A prior restraint is a governmental restriction imposed in advance of expression that prevents speech, assembly, or petition from occurring at all. *Near v. Minnesota,* 283 U.S. 697, 713 (1931). Prior restraints bear a heavy presumption against their constitutional validity. This Court has previously found that a complete ban on an individual's presence at City Hall, imposed without procedural safeguards, constitutes an impermissible prior restraint. *Cuellar v. Bernard,* No. SA-13-CV-91-XR, 2013 U.S. Dist. LEXIS 43145, at *10–11 (W.D. Tex. Mar. 27, 2013).

65.    **Theory One — Communication Ban as Prior Restraint.** The ordinance prohibits the Mayor from any direct communication with any city employee, consultant, or the City Attorney without the express written consent of the City Council—a government-permission-before-speech requirement. A licensing scheme conditioning expression on advance government permission is constitutional only if it operates under procedural safeguards designed to prevent censorship. *Collins v. Ainsworth,* 382 F.3d 529, 539 (5th Cir. 2004). The City Council's written-consent requirement contains no procedural safeguards: no standards govern when consent will be granted; no timeline; no appeal; no judicial review. The political body adverse to Plaintiff holds unfettered discretion to approve or block any communication. That is a censorship system.

66.    **Theory Two — Physical Access Bar as Prior Restraint.** Ordinance No. 2026-09 bars Plaintiff from City Hall except within 30-minute monthly windows. For an elected official whose statutory duties under § 22.042 require him to be physically present to perform them, this near-total exclusion—imposed without any procedural safeguards—is a prior restraint on his ability to exercise his First Amendment rights in the very building where those rights must be exercised to have meaning. *Cuellar,* 2013 U.S. Dist. LEXIS 43145, at *9–11.

67.    **No Procedural Safeguards.** Both prior restraints were imposed without any procedural safeguards: no prior written notice of specific allegations; no disclosure of evidence; no opportunity to be heard; no neutral decisionmaker; no

defined criteria governing scope or duration. *Cuellar,* 2013 U.S. Dist. LEXIS 43145, at *10–11.

68.     **Individual Defendant Personal Participation.** Defendants Burton, Jimmy Hernandez, Sellars, Ebersole, and Weaver all voted to enact Ordinance No. 2026-09. At the March 23 meeting, Burton, Jimmy Hernandez, and Sellars voted to enact Ordinance No. 2026-11; Ebersole and Weaver voted against it. Defendant Trevino designed and transmitted the prior restraint instruments with enforcement directives and continued enforcement after explicit written notice they were void. Defendant Maria Hernandez enforced both prior restraints by deactivating credentials, directing law enforcement to expel Plaintiff from the March 12 WOTA meeting, and transmitting isolation directives. Defendants Cavazos and Nelms enforced the access prior restraint through the March 12 and March 12 confrontation.

69.     **Damages.** Plaintiff has suffered ongoing deprivation of his First Amendment rights, complete suppression of his official speech, reputational harm, emotional distress, and dignitary harm. Plaintiff is entitled to declaratory relief that the void ordinances constitute impermissible prior restraints, injunctive relief, compensatory and nominal damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

**COUNT III: 42 U.S.C. § 1983**
**FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS**
**(Against All Defendants)**

70.     Plaintiff incorporates all preceding paragraphs.

71.    **Legal Standard.** To establish procedural due process deprivation: (1) deprivation of a protected liberty or property interest; (2) without adequate process. *Saucedo-Falls v. Kunkle,* 299 F. App'x 315, 319 (5th Cir. 2008). At minimum, due process requires notice and an opportunity to be heard. *Gibson v. Tex. Dep't of Ins.,* 700 F.3d 227, 239 (5th Cir. 2012).

72.    **Protected Interests.**

(a) *Property Interest in Office*: Plaintiff has a constitutionally protected property interest in the exercise of the powers and functions of his elected office. *Crowe v. Lucas,* 595 F.2d 985, 993 (5th Cir. 1979);

(b) *Liberty Interest in City Hall Access*: Individuals possess a liberty interest in being in a public place of their choice. *City of Chicago v. Morales,* 527 U.S. 41, 54 (1999). *Cuellar,* 2013 U.S. Dist. LEXIS 43145, at *12–13. For an elected official whose statutory duties require physical presence in the building, this interest is categorically stronger; and

(c) *Liberty Interest in Reputation*: Plaintiff has a liberty interest in his reputation in connection with the governmental action publicly stripping him of his official functions. *Paul v. Davis,* 424 U.S. 693, 701 (1976).

73.    **Process Due.** Before depriving Plaintiff of these interests, due process required: prior written notice of specific allegations; disclosure of complainants' identities; disclosure of evidence to be presented; an opportunity to respond; a neutral decisionmaker; and defined criteria governing when restrictions are warranted.

74.    **Process Received — None.** Plaintiff received none of the above. Defendant Trevino personally presented the allegations in the March 9 Closed Session from which Plaintiff was excluded. Defendant Maria Hernandez—the very administrator who had asked Plaintiff to exercise his oversight authority and who then became his accuser—was permitted to remain in that session while Plaintiff was excluded. The Council Defendants sat as interested parties rather than neutral decisionmakers. The ordinances were enacted and the lockout implemented as a *fait accompli.*

75.    **Objective Inconsistency.** The Council majority was publicly accused of criminal TOMA violations at the March 23–24 meeting yet faced no investigation, restriction, lockout, or suspension of authority. The threshold applied to Plaintiff— performing mandatory statutory duties—was applied to no one else.

76.    **Damages.** Plaintiff has suffered deprivation of his statutory authority, reputational harm, emotional distress, and dignitary harm. Plaintiff is entitled to compensatory and nominal damages, injunctive and declaratory relief, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT IV: 42 U.S.C. § 1983
### FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS / DE FACTO REMOVAL
#### (Against All Defendants)

77.    Plaintiff incorporates all preceding paragraphs.

78.    **Legal Standard.** Substantive due process is violated by governmental conduct that deprives a person of a protected interest in an arbitrary and capricious

manner shocking to the conscience. *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998).

79.     *De Facto* **Removal Without Process.** Defendants have accomplished a *de facto* removal of Plaintiff from the Office of Mayor without invoking any lawful removal proceeding. Texas law provides a specific, exclusive mechanism for removing an elected municipal officer—quo warranto proceedings. *State ex rel. Angelini v. Hardberger,* 932 S.W.2d 489, 490 (Tex. 1996). That mechanism has not been invoked. Defendants have instead used void ordinances, physical lockouts, arrest threats, a communication ban, and institutional isolation to achieve through raw power what they cannot accomplish through law or democracy.

80.     **Functional Nullification of Elected Office.** Plaintiff retains his title as Mayor-CEO. He has been stripped of every functional attribute of that office: he cannot enter City Hall on ordinary working days; he cannot communicate with city employees; he cannot attend EDC meetings; he cannot retrieve his mail; his document-signing authority has been usurped. An elected official who can be arrested for attending a city meeting—because a void ordinance has made him a trespasser— has been removed from office in every sense that matters.

81.     **Arbitrary and Conscience-Shocking Conduct.** The arbitrariness is established by: (a) the complete absence of any predeprivation process; (b) the retaliatory coordination on March 2, 2026; (c) the use of a void ordinance with a self-defeating statutory citation; (d) the arrest threat at a meeting the ordinance had made the Mayor a trespasser; (e) the simultaneous fast-tracking of contracts for the

complainant-employees at the same meeting that doubled down on the Mayor's restrictions, with the stated purpose of protecting them from the Mayor; and (f) the objective inconsistency of applying these extraordinary measures to the elected Mayor while the council majority faced no comparable consequences for its own alleged violations.

82.    **Individual Defendant Participation.** Each individual Defendant acted with deliberate indifference. The Council Defendants deliberately enacted void ordinances. Defendant Trevino deliberately continued directing enforcement after receiving explicit written notice that the ordinances were void *ab initio.* Defendants Cavazos and Nelms deliberately enforced the void ordinance's trespass mechanism. Defendant Maria Hernandez deliberately enforced a physical lockout exceeding the void ordinance's own text—after having herself solicited the Mayor's oversight actions that became the pretext for the restrictions.

83.    **Damages.** Plaintiff has suffered practical deprivation of his elected office, reputational harm, emotional distress, mental anguish, and dignitary harm. Plaintiff is entitled to compensatory and nominal damages, injunctive and declaratory relief, punitive damages against individual Defendants in their personal capacities, and attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT V: SUPPLEMENTAL STATE LAW
### TEXAS OPEN MEETINGS ACT
### (Against the City/Councilmember and City Attorney Defendants in Official Capacities)

84.    Plaintiff incorporates all preceding paragraphs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

85.   **TOMA Requirements.** The Texas Open Meetings Act requires all meetings of governmental bodies to be held pursuant to advance public notice describing with sufficient specificity the subject matter to be discussed or acted upon. Any action taken in violation of TOMA is voidable. TEX. GOV'T CODE §§ 551.002, 551.041, 551.043, 551.102, 551.141.

86.   **March 9, 2026 TOMA Violations.**

(a)   *Defective Notice*: The posted agenda did not identify any ordinance or resolution restricting the Mayor's powers, any legislative action concerning mayoral authority, or the Mayor by name as the subject of any charge. The March 9 agenda failed TOMA's notice requirements entirely as to the legislative action actually taken;

(b)   *Improper Closed Session*: The closed session cited Texas Government Code § 551.072(2)—a real property provision—as partial authority for deliberations having nothing to do with real property;

(c)   *Legislative Direction in Closed Session*: Defendant Jimmy Hernandez's own admissions at the March 23 meeting confirmed that direction was given in the March 9 Closed Session to select an investigative firm and regarding the substance of the legislative measure to be enacted—matters not properly noticed; and

(d)   *Presiding Officer Had No Notice*: The substance of the measure had never been disclosed to the Mayor. *City of Balcones Heights Special Council Meeting* (Mar. 9, 2026), *available at* youtube.com/watch?v=rza83T72KKw, at 26:07–26:22. A governing body that enacts legislation so completely unnoticed that its own presiding officer cannot vote on it has provided adequate notice to no one.

87.   **Declaratory Relief Sought.** Pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.001–37.011, Plaintiff seeks declarations that:

(a)   Ordinance No. 2026-09 is void ab initio under Tex. Loc. Gov't Code § 51.012 and voidable under TOMA;

(b)   Ordinance No. 2026-11 is void ab initio—§ 22.072 is self-defeating because § 22.042 expressly specifies the Mayor's duties;

(c)   The March 9, 2026 legislative action is voidable for TOMA violations;

(d)   The physical lockout of Plaintiff is unlawful and unauthorized;

(e)   Plaintiff retains the full statutory authority of the Mayor-CEO under Chapter 22 of the Texas Local Government Code; and

(f)   Plaintiff is entitled to attorney's fees as the prevailing party under Tex. Civ. Prac. & Rem. Code § 37.009.

**COUNT VI: SUPPLEMENTAL STATE LAW**
**ULTRA VIRES / TEXAS DUE COURSE OF LAW**
**(Against Individual Defendants in Their Official Capacities)**

88.   Plaintiff incorporates all preceding paragraphs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

89.   **Ultra Vires Doctrine.** When a state official acts without legal authority, the official's action is not protected by governmental immunity and prospective injunctive relief is available. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372–73 (Tex. 2009). Each Defendant who enacted, signed, transmitted, or enforced the void ordinances acted without legal authority. *Suarez v. Silvas,* No. 04-19-00816-CV, 2020 WL 2543311, *5 (Tex. App.—San Antonio May 20, 2020, no pet.).

90.   **Individual Ultra Vires Conduct.**

(a)   Defendants Burton, Jimmy Hernandez, Sellars, Ebersole, and Weaver acted without legal authority in enacting Ordinance Nos. 2026-09 and 2026-11, each of which directly contradicts Texas Local Government Code § 22.042 and is prohibited by § 51.012;

(b)   Defendant Burton acted without legal authority in signing Resolution No. 2026-08R and other official City documents in the Mayor's stead; because the ordinances purporting to authorize this conduct are void ab initio, any instruments, documents, or official actions signed by Burton in the Mayor's stead are likewise void and without legal effect;

(c)   Defendant Trevino acted without legal authority in drafting Ordinance No. 2026-11 citing § 22.072 when that provision expressly does not apply to the Mayor's office, in transmitting

enforcement directives based on void ordinances, and in continuing to direct enforcement after receiving explicit written notice on March 14, 2026 that the ordinances were void ab initio;

(d)    Defendant Maria Hernandez acted without legal authority in enforcing a physical lockout not authorized by the void ordinance, directing law enforcement to expel Plaintiff from his March 12 WOTA meeting, and directing the communication ban; and

(e)    Defendants Cavazos and Nelms acted without legal authority in threatening to arrest Plaintiff under a void ordinance. A void ordinance confers no authority. The trespass it purported to create is itself void, and no lawful arrest can be predicated on a void ordinance.

91.    **Texas Due Course of Law.** Article I, Section 19 of the Texas Constitution prohibits the deprivation of a citizen's privileges or immunities without due course of law. Defendants deprived Plaintiff of his statutory authority without notice, without disclosure of evidence, without an opportunity to respond, without a neutral decisionmaker, and without defined criteria. The objective inconsistency—applying these extraordinary measures to an elected Mayor performing mandatory statutory duties while no comparable measures were applied to the council majority for its own alleged violations—demonstrates the arbitrariness abhorrent to due course of law.

92.    **Relief.** Plaintiff is entitled to prospective injunctive relief against each individual Defendant in their official capacity, including: restoration of full access to City Hall; restoration of direct communication rights; restoration of document-signing authority; and an injunction prohibiting enforcement of Ordinance Nos. 2026-09 and 2026-11. Plaintiff is also entitled to attorney's fees. *City of San Antonio v. Int'l Ass'n of Firefighters, Local 624,* 582 S.W.3d 455, 467 (Tex. App.—San Antonio 2018, no pet.).

## VI.    DAMAGES

93.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: (a) reputational harm from the public nature of the retaliatory conduct; (b) emotional distress, mental anguish, humiliation, and dignitary harm—including the profound humiliation of being threatened with arrest by his own police chief for attempting to attend a city meeting, and of being barred from City Hall on all but a few hours per month; (c) ongoing chilling and suppression of his constitutional rights; and (d) all other actual damages proven at trial.

94.    Plaintiff is entitled to nominal damages for each constitutional violation. *Carey v. Piphus,* 435 U.S. 247 (1978).

95.    Plaintiff is entitled to punitive damages against individual Defendants in their personal capacities.

## VII.    CONDITIONS PRECEDENT

96.    All conditions precedent have been performed, have occurred, or have been waived. Plaintiff made formal written demands through prior counsel on March

10, March 14, and March 24, 2026. Plaintiff called a special meeting on March 20, 2026 which was canceled due to an agenda error. Plaintiff participated in the March 23 meeting at which the Council majority further entrenched the unlawful restrictions. This lawsuit is Plaintiff's only remaining option after weeks of documented, good-faith, unsuccessful extrajudicial remedies.

## VIII.    NOTICE AGAINST SPOLIATION

97.    Defendants are notified that all audio recordings, video recordings (including body camera footage from the March 12 and March 12, 2026 incident), security camera recordings, emails, text messages, written complaints, witness statements, meeting minutes, certified agendas, personnel files, employment contracts, engagement agreements with third-party investigators, and all other evidence related to: (a) the allegations against Mayor Rodriguez; (b) the March 9 and March 23, 2026 meetings; (c) Ordinance Nos. 2026-09 and 2026-11; (d) the physical lockout; (e) the March 12, 2026 confrontation; (f) the communication ban and employee isolation; (g) the fast-tracking of employment contracts at the March 23, 2026 meeting; and (h) the RMS/CAD system procurement, the 287(g) policy enactment, and the Police Chief employment contract—must be immediately preserved.

## IX.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Johnny A. Rodriguez, Jr. respectfully prays that this Court:

A.    Issue a preliminary and permanent injunction restoring Plaintiff's full access to City Hall and all municipal facilities; restoring his right to communicate

directly with city employees, the City Attorney, and city consultants; restoring his document-signing authority as chief executive officer; and restraining Defendants from enforcing Ordinance Nos. 2026-09 and 2026-11 or taking any action pursuant to their purported authority;

B.    Enter a declaratory judgment that Ordinance Nos. 2026-09 and 2026-11 are void ab initio, that the physical lockout is unlawful and unauthorized, and that Plaintiff retains the full statutory authority of the Mayor-CEO of the City of Balcones Heights;

C.    Award Plaintiff compensatory damages against all Defendants for reputational harm, emotional distress, mental anguish, humiliation, and all other actual damages proven at trial;

D.    Award Plaintiff punitive damages against the individual Defendants in their personal capacities;

E.    Award Plaintiff nominal damages for each constitutional violation;

F.    Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Tex. Civ. Prac. & Rem. Code § 37.009;

G.    Award pre-judgment and post-judgment interest as allowed by law; and

H.    Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*
**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Drive, Suite 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765
**Counsel for Plaintiffs**