IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHNNY A RODRIGUEZ JR, | § | |
| *Plaintiff,* | § | |
| vs. | § | |
| CITY OF BALCONES HEIGHTS, TEXAS, JACK BURTON, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AS MAYOR PRO TEM; JIMMY HERNANDEZ, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AS CITY COUNCILMEMBER, PLACE 3; DAVID SELLARS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AS CITY COUNCILMEMBER, PLACE 2; TRACY EBERSOLE, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AS CITY COUNCILMEMBER, PLACE 4; MOLLY WEAVER, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES AS CITY COUNCILMEMBER, PLACE 5; MARIA HERNANDEZ, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES AS CITY ADMINISTRATOR; CYNTHIA TREVINO, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES AS CITY ATTORNEY; ROGER CAVAZOS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AS CHIEF OF POLICE; AND ROBERT NELMS, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AS ASSISTANT CHIEF OF POLICE; | § | SA-26-CV-02327-OLG |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Plaintiff's Emergency Motion for Preliminary Injunction [#2]. This case was referred to the undersigned by the District Court on

1

April 10, 2026, for all pretrial proceedings, including a report and recommendation on the pending request for a preliminary injunction. The undersigned held a live evidentiary hearing on the motion on May 1, 2026, at which counsel for Plaintiff and Defendants appeared and presented witness testimony and other evidence. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiff's motion be denied.

## I. Background

This case arises out of a dispute between the elected mayor of the City of Balcones Heights, Texas, and other City employees, including members of the City Council. Plaintiff Johnny A. Rodriguez, Jr., was elected as mayor-CEO of Balcones Heights in 2024 and was the only candidate on the May 2, 2026 ballot for reelection. By this action, Mayor Rodriguez claims that he is currently being prevented from performing his statutory duties as mayor due to the passage of several unlawful City resolutions and ordinances barring him from City Hall and curtailing his rights of speech and association with City employees and consultants.

The named Defendants are the City of Balcones Heights and numerous City employees in their individual and official capacities: Jack Burton (Mayor Pro Tem); David Sellars (City Councilmember Place 2); Jimmy Hernandez (City Councilmember Place 3); Tracy Ebersole (City Councilmember Place 4); Molly Weaver (City Councilmember Place 5); Maria Hernandez (City Administrator); Cynthia Trevino (City Attorney); Roger Cavazos (Chief of Police); and Robert Nelms (Assistant Chief of Police). The live pleading, which is Mayor Rodriguez's Original Complaint, asserts various federal causes of action pursuant to 42 U.S.C. § 1983, namely: (1) violation of the First Amendment through retaliation for protected speech; (2) violation of the First Amendment by enacting a prior restraint on speech; (3) violation of the

right to procedural due process; and (4) violation of the right to substantive due process. Mayor Rodriguez also asserts two claims under Texas law—a violation of the Texas Open Meetings Act and the ultra vires doctrine.

By this suit, Mayor Rodriguez seeks compensatory damages against all Defendants for reputational harm and emotional distress, punitive damages, a declaratory judgment proclaiming the challenged ordinances void, and a preliminary and permanent injunction. Whether he is entitled to the preliminary injunction is the only issue addressed in this report and recommendation.

All named Defendants are represented by the same attorney except for Chief Cavazos, the Police Chief of Balcones Heights. Both the City Defendants and Chief Cavazos have filed responses in opposition to the preliminary-injunction motion [#12, #16], to which Mayor Rodriguez replied [#18, #20]. The parties have also supplied the Court with joint stipulations of facts [#19]. At the live preliminary-injunction hearing, the parties entered various exhibits into evidence, and the Court heard the testimony of Mayor Rodriguez and Defendant Maria Hernandez (City Administrator). At the close of the hearing, the undersigned took the motion under advisement and now issues this report and recommendation for the District Court to deny the request for a preliminary injunction.

## II. Findings of Fact

After reviewing the parties' stipulated facts, exhibits, and the testimony of Mayor Rodriguez and Administrator Herndandez, the undersigned issues the following findings of fact. Mayor Rodriguez has served continuously as the duly elected Mayor of the City of Balcones Heights since 2024. (Stip. Facts [#1], at ¶ 2.) The City of Balcones Heights is a Type A General law municipality organized under Chapter 22 of the Texas Local Government Code, which

operates with a mayor elected at large and five councilmembers elected by place. (*Id.* at ¶¶ 5, 7.) The Mayor serves the City of Balcones Heights without compensation. (*Id.* at ¶ 4.)

On March 3, 2026, Mayor Rodriguez met with Chief Cavazos and City Administrator Hernandez in Hernandez's office to address concerns regarding the recent loss of four police ticket-writing equipment units collectively valued at $12,000. (*Id.* at ¶¶ 9, 10.) The following day, March 4, 2026, Mayor Rodriguez issued written correspondence to Hernandez and Chief Cavaozos, which memorialized those concerns and directed Chief Cavazos to conduct an investigation into how the equipment was lost and to submit a written plan within seven days outlining both steps to recover the equipment and measures to avoid future losses. (*Id.* at ¶ 11; Mayor Ltr. [#19], at 9.) The record contains a responsive document on Balcones Heights Police Department letterhead, which is directed to the Mayor and Hernandez, addresses the Mayor's concerns, and is signed by Chief Cavazos. (Stip. Facts [#19], at ¶ 12; Cavazos Ltr. [#19], at 9–14.) Although the letter is dated March 5th,[1] Mayor Rodriguez did not receive a copy of the correspondence until Hernandez found the letter in the "trash" folder of her e-mail account approximately 30 days later. Hernandez testified that Chief Cavazos hand delivered the letter to her and that she scanned the document to send to Mayor Rodriguez. Apparently, she failed to forward the scanned document; hence, the draft was in her "trash" folder.

The City Council held a specially called City Council meeting on March 9, 2026, for the stated purpose of addressing an issue regarding the Police Department and a recent grant.[2] (Mtg. Agenda [#19], at 36–37.) At the close of the discussion regarding the grant, Mayor Rodriguez

---

[1] The letter is dated March 4, 2026, on the first page, but is dated March 5, 2026, on the signature line.

[2] An audio recording of the open portion of this meeting is available at the City's YouTube Channel at https://www.youtube.com/watch?v=FtxYvN_7Pn0 (last visited May 7, 2026).

was recused, and the City Council entered a closed session. (*Id.* at 37.) The City Council had received multiple complaints against Mayor Rodriguez from City employees, and the closed session was called to address the concerns and allegations raised in those complaints.[3] (Resolution 2026-08R [#19], at 31; Special Call Meeting Minutes [#19], at 40–41; Correspondence [#19], at 53.) These complaints accused the Mayor of harassment and creating a hostile work environment and concerned incidents spanning from June 2024 to March 9, 2026. (Complaints [#16-2], at 1–3.) Two of the complaints were accompanied by letters of resignation (dated March 2 and 9, 2026), where the employees indicated they were resigning due to treatment by Mayor Rodriguez. (*Id.* at 110, 132.) The City has received additional complaints about the Mayor since the date of the closed session. (*Id.* at 1–3.) In the closed session, the City Council was presented with an initial report regarding the personnel complaints it was aware of at that time and determined it necessary to investigate them. (Resolution 2026-08R [#19], at 32.)

After this discussion, the City Council returned to an open session with Mayor Rodriguez present and adopted Resolution No. 2026-08R to authorize a third-party investigation into the complaints and for City Administrator Hernandez to execute an engagement agreement with The Austin Institute, LLC, or any other agreed-upon investigator to conduct the investigation and provide a report to the City Attorney and City Council upon completion. (*Id.*) Resolution 2026-08R explains that the City's Personnel Policy does not specifically address the process or procedures for handling grievances against the City's governing body but noted that an active ordinance imposes on the City Council and the mayor the responsibility of ensuring the integrity of governance and its discipline. (*Id.* at 31.)

---

[3] There is no audio recording of the closed session.

The City Council also enacted Ordinance No. 2026-09, which sets forth various specified powers of the Mayor and imposes certain limitations on those powers. (Stip. Facts [#19], at ¶¶ 13, 14; Ordinance 2026-09 [#19], at 16–19.) The limitations include the following:

> (5) The Mayor shall arrive thirty (30) minutes before council meetings are to begin and shall conclude all business and leave the meeting location within thirty (30) minutes of the conclusion of the meeting. This limitation on meeting attendance shall continue until rescinded by City Council.
>
> (6) The Mayor may not have any direct communication, including contact by email, phone, text or in person or other form of contact with City staff or consultants, including the City Engineer or City Attorney, without the express written consent of the City Council. This limitation on communications shall continue until rescinded by City Council.
>
> (7) Any communication from the Mayor must be submitted to the Mayor Pro Tem, who in turn will communicate with the City Administrator. This limitation shall continue until rescinded by City Council.

(Ordinance 2026-09 [#19], at ¶ 19.) Since March 9, 2026, Mayor Rodriguez's official communications with City staff have been routed through Defendant Jack Burton in his capacity as Mayor Pro Tem; City staff and consultants have ceased direct communications with Mayor Rodriguez. (Stip. Facts [#19], at ¶¶ 32, 33.) After being informed of the outcome of the closed session, on March 10, 2026, Mayor Rodriguez requested clarification, documentation, and legal authority regarding the City Council's actions. (Correspondence [#19], at 52–54.)

A few days later, on March 12, 2026, Mayor Rodriguez attended a meeting at City Hall with investors and developers regarding the City's Economic Development Corporation ("EDC") and its ownership stake in the Wonderland of the Americas shopping mall. When he went to City Hall to attend this meeting, Mayor Rodriguez discovered that his access card was not working to access secured places in City Hall or its parking lot and that his name had been "taped over" on his parking spot. Mayor Rodriguez knocked on a door for entry into the secured area of City Hall, and eventually a maintenance worker let him in so he could access the meeting

room.  Upon entry, City Administrator Hernandez informed him that he no longer had card access to the restricted areas in City Hall and called Chief Cavazos.  Chief Cavazos arrived and threatened him with arrest if he did not leave City property and locked all doors to City offices and even the restroom. The Mayor was thus physically confined to a single room in City Hall. Mayor Rodriguez has not returned to City Hall since that incident due to fear of arrest, aside from attending City Council meetings.  (The City Defendants presented evidence that although Mayor Rodriguez's card access to secure parts of City Hall is currently suspended, he can still access the parts of City Hall that are publicly available.)

The City Council held a regular meeting on March 23, 2026, approximately two weeks later, with Mayor Rodriguez in attendance and presiding.[4]  (Meeting Minutes [#19], at 44–47.) At the meeting, citizens provided testimony on various topics, including concerns regarding staff turnover and the "toxic work environment" created by the Mayor.  (*Id.* at 46.)  Mayor Rodriguez vocally objected to the enactment of Ordinance 2026-09 and the restrictions imposed upon him, including the threatened arrest on May 10, 2026.  At the close of the meeting, the City Council enacted Ordinance No. 2026-11.  (Stip. Facts [#19], at ¶¶ 18, 19; Ordinance 2026-11 [#19], at 21–29.)  The stated purpose of Ordinance No. 2026-11 was to ratify Ordinance No. 2026-09 with a correction, to formally authorize an investigation of the complaints against the mayor by a third-party investigator, and to impose additional limitations regarding the Mayor's contact with City staff during the pendency of the investigation.  (Ordinance 2026-11 [#19], at 22–23.)  These limitations include the following:

---

[4]  A video recording of the meeting is available on the City's YouTube channel at https://www.youtube.com/watch?v=FtxYvN_7Pn0 (last visited May 7, 2026).

1) During the pendency of the third party investigation ordered under Resolution No. 2026-08R, the Mayor will be limited to only having access to the public, common areas of the Balcones Heights Justice Center.

2) Access to the restricted areas of the Justice Center by building access card and restricted access parking area by gate access fob shall be suspended until further ordered by the City Council.

3) The Mayor shall conduct his duties at the office established for use by the Mayor at the Wonderland of the America's mall.

4) The Mayor may not discipline, order the discipline, terminate, order the termination of an employee or take any other form of adverse actions against officers or employees of the City, or against contractors or vendors hired by the City, without the express written consent of the City Council.

5) The Mayor may not direct any officers or employees of the City, including the City Engineer or City Attorney, to act contrary to the directions of the City Council.

6) The Mayor may not deny a Councilmember's request for City records or documentation made for official purposes.

7) The Mayor shall arrive thirty (30) minutes before any city council, EDC or other meeting wherein the Mayor serves on the board meetings are to begin and shall conclude all business and leave the meeting location within thirty (30) minutes of the conclusion of the meeting.

8) The Mayor may not have any direct communication, including contact by email, phone, text or in person or other form of contact with City staff or consultants, including the City Engineer or City Attorney, without the express written consent of the City Council.

9) Any communication from the Mayor must be submitted to the Mayor Pro Tem, who in turn will communicate with the City Administrator.

(*Id.* at 27.) Ordinance 2026-11 specifies that the limitations on the powers of the Mayor are temporary and "shall remain in effect during the third-party investigation into the complaints and allegations against the Mayor is completed or further order of the City Council, whichever occurs last." (*Id.* at 23.)

After this case was filed, the City held a regular City Council meeting on April 27, 2026.[5] (Mtg. Agenda, Pl.'s Ex. 1.) This meeting included a closed session regarding findings of the ongoing investigation. (*Id.*) According to Mayor Rodriguez, there was an unsuccessful attempt by Defendant Councilmember Sellars to remove him from his elected office as Mayor at this meeting. (The other councilmembers voted against his removal.)

Due to the existing restrictions imposed by the two ordinances, the Mayor can only access the public areas of City Hall and does not have access to its secured areas. This means that Mayor Rodriguez currently cannot access his official mail because his mailbox is in the restricted area of City Hall in a hallway with administrative offices behind the municipal court clerk's office. (However, it is not clear whether the Mayor has asked for but been denied a request to have his mail retrieved.) In addition, the Mayor no longer has access to his office located in City Hall. The Mayor has a second office, however, which is located at the Wonderland of Americas shopping mall and was established for purposes of addressing EDC-related business. The Mayor continues to have access to this office for use during negotiations to restructure the EDC agreement and to conduct any other City business. He also continues to have access to his City-issued cell phone for City business. The Mayor, however, is unable to convene staff meetings or to meet with City contractors directly for the purposes of managing implementation of a $250,000 federal grant awarded to the City for a senior citizens community center. (*See also* Stip. Facts [#19], at ¶ 36 (federal grant at issue is in the approximate amount of $250,000).) His communications must, as stated in the Ordinances, go through the Mayor Pro Tem (Defendant Burton).

---

[5] An audio recording of this meeting is available on the City's YouTube Channel, at https://www.youtube.com/watch?v=3QO31vwAtuA (last visited May 7, 2026).

The investigation into the complaints against Mayor Rodriguez has begun and is ongoing. According to counsel for the City Defendants, the investigation is expected to be completed within 30 days of the preliminary-injunction hearing. Prior to the hearing, Mayor Rodriguez received communication from Lloyd Gosselink Rochelle & Townsend, P.C., the law firm conducting the investigation, requesting an interview.

### III.  Proposed Conclusions of Law

By his motion, the Mayor requests the following relief: (1) immediate restoration of his building entry access card and access code for City Hall and all municipal facilities; (2) a prohibition on the enforcement or implementation of Ordinance No. 2026-09 and Ordinance 2026-11 pending final resolution of this case; (3) restoration of his right to communicate directly with City employees and consultants; (4) lifting of requirement that he communicate through the Mayor Pro Tem Jack Burton or any other intermediary as a condition of conducting City business; (5) restoration of his authority to sign official City documents, contracts, ordinances, etc.; (6) restoration of access to his City mailbox and official correspondence; (7) prohibition on further threats of arrest, detention, removal, or confinement of Mayor Rodriguez at City Hall or other municipal facility; and (8) preservation of all audio and video recordings and other evidence related to this litigation.

To obtain the requested preliminary injunction, Mayor Rodriguez must establish the following: (1) a substantial likelihood of success on the merits of at least one of his claims; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).  A preliminary injunction is an "extraordinary remedy" that

should only be granted if the moving party has clearly carried the burden of persuasion on all factors. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Because Mayor Rodriguez has not shown a substantial likelihood of success on the merits of any of his federal or state-law claims at this preliminary juncture and on this limited evidentiary record, he is not entitled to the extraordinary relief he seeks.

## A. First Amendment Claims

The Mayor primarily focuses on his First Amendment claims in his motion for a preliminary injunction. These claims are raised pursuant to 42 U.S.C. § 1983. To prevail on a claim under Section 1983, a plaintiff must show both the violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, neither side disputes that Defendants were acting under color of state law. Thus, the Court must determine whether the Mayor has established a substantial likelihood of success on his claim that Defendants violated a right secured by the First Amendment, either by (1) engaging in unlawful retaliation for protected speech or (2) imposing an unconstitutional prior restraint on speech and association.

### i. Retaliation

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation omitted). To prevail on his claim of First Amendment retaliation, Mayor Rodriguez must establish the following: (1) he was engaged in constitutionally protected activity; (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendants' adverse actions

11

were substantially motivated against his exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Regarding the third element, the Mayor must establish a "causal connection" between Defendants' "retaliatory animus" and his "subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves*, 587 U.S. at 398 (emphasis in original). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399.

As to the first element, Mayor Rodriguez argues that he engaged in the following protected activity regarding matters of public concern: the formal written directive regarding the lost police equipment to Chief Cavazos on March 4, 2026; his public statements at City Council meetings; his formal written demands on March 10, 2026, for clarification of the legal authority for Ordinance 2026-09; and his attempt to call a special meeting to seek its recission. Regarding the second element, Mayor Rodriguez asserts that Defendants enacted ordinances stripping him of his authority as Mayor and curbing his rights to free speech and association and threatened his arrest for entering City Hall property and meeting with City consultants. As to the causal connection, the Mayor emphasizes that the adverse acts taken by the City began mere days after his confrontation with Chief Cavazos about the missing police equipment.

Even assuming the Mayor can show he engaged in protected activity and suffered chilling consequences, he has not demonstrated a substantial likelihood of success on the merits of his First Amendment retaliation claim because of the weakness of his causation evidence. Although timing is certainly relevant to causation and the timing here might be enough to generate a fact issue on summary judgment, on the facts in this record, the timing evidence alone

is not sufficient to establish the likelihood of success required to entitle the Mayor to a preliminary injunction. In the week leading up to the March 9, 2026 specially called City Council meeting, two employees resigned from their City employment, citing hostile treatment by Mayor Rodriguez as their reason for resigning. At that point, the City had received at least 17 complaints from various employees regarding unprofessionalism and harassment by the Mayor. The timing of these resignations and complaints are the reasons given by the City Defendants for the timing of their actions.

The Mayor argues that because some of the 17 complaints date as far back as 24 months ago and because the City Council did not immediately act on those earlier complaints, there is enough evidence to prove causation when considered along with the close timing between his directive to the police chief and the special council meeting. The undersigned disagrees. Given that the last two complaints were accompanied by resignation letters and came against a backlog of several other complaints, the Mayor has failed to show a substantial likelihood that his communication with Chief Cavazos about missing police equipment (or any other identified protected activity) was the but-for reason for the City Council action, such that the City's investigation would not have occurred absent retaliatory motive.

### ii. **Prior Restraint**

A prior restraint is a governmental restriction imposed in advance of expression that prevents speech, assembly, or petition from occurring at all. *See Near v. Minnesota*, 283 U.S. 697, 713 (1931). Prior restraints bear a heavy presumption against constitutional validity. *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 467 (5th Cir. 1980). The Supreme Court has used a three-step approach to determine whether a First Amendment right has been violated. *See Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The first step

is to determine whether the claim involves protected activity under the First Amendment; the second step is to identify the nature of the forum; and the third step is to assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard. *Id.*

Here, Mayor Rodriguez alleges that the challenged ordinances deprive him of both communication with City employees and consultants and physical access to City Hall. As Defendants point out, however, there is no content-based exclusion in the ordinances; the Mayor is still able to attend, participate in, and preside over City Council meetings and enter the spaces in City Hall for such meetings. The evidence does not establish that Mayor Rodriguez is prevented from expressing his public opinion during or outside of those meetings. There is also not a complete ban on his communication with City employees and consultants, only a temporary requirement that this speech be conducted through the Mayor Pro Tem during the investigation.

"For First Amendment purposes, '[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.'" *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344 (5th Cir. 2001) (per curiam) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983)). The Supreme Court has distinguished between traditional public forums, designated public forums, limited public forums, and non-public forums. *See id.* City Hall is a traditional and designated public forum, the exclusion from which is "subject to rigorous first amendment scrutiny." *Id.* Where there is a regulation regarding the time, place, and manner restriction of expression, which is content-neutral, as here, the restrictions must be narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Id.* at 344–45 & n.9. Defendants bear the burden of showing that the "remedy [the City] has

14

adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Doe I v. Landry*, 909 F.3d 99, 112–13 (5th Cir. 2018) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994)).

To obtain a preliminary injunction, the Mayor must therefore demonstrate that he is substantially likely to prevail on his claim that the time, place, and manner restrictions imposed by the challenged ordinances are not narrowly tailored to serve a significant government interest. Considering the evidence produced by Defendants (numerous complaints against the Mayor, employee resignations, and the ongoing investigation into those complaints), the restrictions on the Mayor's access to the areas of City Hall where the complainants are officing serves a significant government interest: preserving the integrity of the investigation into complaints of workplace harassment against an elected official. The limitations on direct communication with City employees, including complainants, also advances that government interest, especially because alternative means of communication (through the Mayor Pro Tem) are explicitly allowed.

In support of his position, Mayor Rodriguez cites a district court decision finding that a ban on a municipal officer's presence at City Hall (at all times and for all purposes) was not narrowly tailored to serve a government interest. *See Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 WL 1290215, at *3 (W.D. Tex. Mar. 27, 2013). But here, as has already been noted, there is no such total ban. The Mayor is only prevented from entering the private areas of City Hall where City employees have their offices, not the public areas, like the City Hall chambers, where views are expressed or where the City conducts its official business. The Mayor has been provided another office at the Wonderland of the Americas mall location where he can carry out his duties as mayor. Additionally, the time, place, and manner restrictions imposed on the

15

Mayor are temporary—only enduring for the length of the investigation, which is expected to be completed within a few weeks. The temporary nature of the restrictions and other procedural safeguards—providing an alternative office, keeping open alternative channels of communication, providing access to the public forum for City Council meetings—"obviate the dangers of a censorship system." *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004) (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975)). Meanwhile, in *Cuellar*—the case cited by the Mayor—there was no evidence that any procedural safeguards were employed to protect the plaintiff's right to personally speak at the city council meetings due to the total ban on entry to City Hall. *See Cuellar*, 2013 WL 1290215, at *4.

In short, Mayor Rodriguez has not presented the Court with sufficient evidence to establish that he has a substantial likelihood of success on his claim that the challenged ordinances constitute an unconstitutional prior restraint on his rights to speech and association. In contrast, the evidence supports Defendants' contention that they are likely to succeed in showing that the temporary time, place, and manner restrictions are narrowly tailored to serve a significant government interest.

**B.      Due Process Claims**

Although the Mayor's motion for a preliminary injunction only briefly addresses his due process claims, the undersigned notes that these claims also do not support the imposition of the requested preliminary injunction. As to procedural due process, the remedy for any such violation is, in most circumstances, the process that was due, not an injunction preventing the implementation of the challenged ordinances. *See Bradshaw v. Salvaggio*, No. SA-20-CV-01168-FB, 2020 WL 8673836, at *6 (W.D. Tex. Oct. 28, 2020), *report and recommendation adopted*, No. CV SA-20-CA-1168-FB, 2020 WL 8673835 (W.D. Tex. Oct. 30, 2020). A claim

regarding substantive due process requires the deprivation of a life, liberty, or property interest in such an arbitrary and capricious manner that it "shocks the conscience." *Castille v. Port Arthur ISD*, 168 F.4th 240, 253 (5th Cir. 2026). This is a very high standard, made even more difficult to demonstrate in the context of a request for the extraordinary remedy of a preliminary injunction.

**C.      State Law Claims**

Mayor Rodriguez argues he is likely to prevail on his claim that the challenged ordinances are void on their face under Texas law, were enacted in violation of the Texas Open Meetings Act, and constitute *de facto* removal from office without legal authority. The Mayor has not demonstrated a substantial likelihood of success on these claims either.

First, as to the claim that the ordinances constitute removal from office, this assertion is belied by the evidentiary record. Texas law provides an exclusive mechanism for removal of an elected official—quo warranto proceedings. *State ex rel. Angelini v. Hardberger*, 932 S.W.2d 489, 490 (Tex. 1996). That mechanism has not been invoked, and Mayor Rodriguez has not been removed from office. Mayor Rodriguez has not demonstrated a substantial likelihood that this Court will find at a trial on the merits that the temporary restrictions on the time, place, and manner of his official duties as mayor effectively prevent him from carrying out his duties.

Second, as to the asserted violation of the Texas Open Meetings Act ("TOMA"), Defendants argue that any failure to identify part of the subject matter of the March 9th City Council meeting was corrected by the March 23rd meeting, rendering this claim moot. The undersigned agrees. TOMA requires a governmental body to give notice of the date, hour, place, and subject of each meeting. Tex. Gov't Code § 551.041. The notice provided by the governmental body must be sufficiently specific to alert the public to the topics to be considered

at the upcoming meeting.  *Cox Enters., Inc. v. Bd. of Trs.*, 706 S.W.2d 956, 959 (Tex. 1986).  The provisions of TOMA are mandatory and are to be liberally construed in favor of open government.  *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 466–67 (Tex. App.—Dallas 2007, no pet.).  Any action taken by a governmental body in violation of TOMA is voidable.  Tex. Gov't Code § 551.141.

The TOMA violation asserted by the Mayor relates to the City's failure to give him that the City Council would be presented with the complaints against him and the opportunity to enact resolutions and ordinances regarding those complaints at the March 9th meeting.  Any TOMA violation based on this issue is moot in light of the properly noticed regular March 23rd City Council meeting.  *See City of Combine v. Robinson*, No. 05-10-01384-CV, 2011 WL 3570510, at *3 (Tex. App.—Dallas Aug. 16, 2011, no pet.) ("The vote at the August 9, 2010 meeting ratified actions taken at the July 24, 2010 meeting and, thereby, negated any justiciable controversy as to the validity of the July 24, 2010 vote").  The March 23rd agenda specifically lists hearing complaints regarding Mayor Rodriguez, as well as the proposal to enact an ordinance ratifying Ordinance 2026-09.  (Agenda [#16-5], at 6.)

Finally, Mayor Rodriguez has not shown a likelihood of success on the merits of his claim that the challenged ordinances are void because they were enacted without authority from the Texas Local Government Code.  The challenged ordinances purport to draw authority from Section 22.072 of the Texas Local Government Code, which authorizes the council to prescribe duties of officers "whose duties are not specified by this code."  Tex. Loc. Govt' Code § 22.072(b).  Section 22.042 expressly specifies the mayor's core statutory duties.  *Id.* § 22.042.  Per the Mayor, Section 22.072 therefore cannot apply to the office of mayor on its own terms.

18

The Mayor further argues that because there is no other statutory foundation for the ordinances, they are void ab initio.

The Mayor's argument is a novel one, and he has not directed the Court to any authority supporting this reading of the Texas Local Government Code. He therefore has not established that he is substantially likely to succeed on the merits of this statutory argument. Nor is it defensible when the Court reads the Code as a whole. First, the parties agree that Type A general law cities—unlike home rule cities—have "only such implied powers as are reasonably necessary to make effective powers expressly granted." *See* Tex. Loc. Gov't Code § 51.001; *see also Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 535 (Tex. 2016). Accordingly, the governing body of the City—the City Council—does enjoy implied powers to make effective powers expressly granted. Section 22.042, the provision setting forth the mayor's core powers, also states that "[t]he Mayor shall at all times actively ensure that the laws and ordinances of the municipality are properly carried out" and that "[t]he mayor shall perform the duties and exercise the powers prescribed by the governing body of the municipality." Tex. Loc. Gov't Code § 22.042(a). This provision acknowledges that the City Council does enjoy the power to prescribe (or arguably limit) the mayor's powers.

In light of Section 22.042's acknowledgement that the City Council at times does prescribe the mayor's powers, the better reading of Section 22.072 is that the City Council "may prescribe the powers and duties" of the mayor where the duties at issue fall outside of the core duties set forth in Section 22.042, not that duties of the mayor can never be prescribed. Nothing in the challenged ordinance circumscribes the Mayor's core statutory duties set forth in Section 22.042. Rather, the ordinance temporarily imposes time, place, and manner limitations on the Mayor to preserve the integrity of a harassment investigation and to address a situation where the

19

Mayor is accused of failing "to ensure that the laws of the municipality are properly carried out."

*See id.* Mayor Rodriguez has not established at this juncture a likelihood of success on the merits based on a claim that the ordinances are void under Texas law.

Because the undersigned finds that Mayor Rodriguez has not satisfied the heavy burden of showing a substantial likelihood of success on any of his claims, the Court need not address the other elements for entry of a preliminary injunction. The Court also need not address Defendants' arguments that they are entitled to various immunity defenses in their individual capacities.[6] In sum, Mayor Rodriguez has not demonstrated his entitlement to the extraordinary relief of a preliminary injunction prohibiting the enforcement of the challenged ordinances during the pending investigation,[7] and the undersigned will recommend the District Court deny the motion.

## IV.  Conclusion and Recommendation

Having considered the parties' briefing, the stipulated facts, evidentiary record, testimony at the hearing, and the governing law, the undersigned **recommends** that Plaintiff's Emergency Motion for Preliminary Injunction [#2] be **DENIED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as

---

[6] Defendants argue they enjoy legislative immunity and qualified immunity, and City Attorney Trevino asserts she also enjoys attorney immunity. These defenses will be addressed if raised in any forthcoming motions to dismiss or motions for summary judgment.

[7] The undersigned notes that Mayor Rodriguez requests as injunctive relief that Defendants be required to preserve evidence. As Defendants in a lawsuit, they are already required to do so. *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."). The Court therefore need not issue such an order.

a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 13th day of May, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

21