| | |
|---|---|
| **JOHNNY A. RODRIGUEZ, JR.,** *Plaintiff,* <br><br> v. <br><br> **CITY OF BALCONES HEIGHTS, TEXAS, et al.,** *Defendants,* | **CIVIL ACTION NO.** <br><br> **5-26-CV-02327-OLG-ESC** |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Johnny A. Rodriguez, Jr., the duly elected Mayor-CEO of the City of Balcones Heights, Texas, brings this First Amended Complaint under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. This First Amended Complaint is filed with leave of Court pursuant to the May 6, 2026 text order extending pleading deadlines and Fed. R. Civ. P. 15(a)(2). It supersedes the Original Complaint [**ECF 1**] and reflects developments through the date of filing, including the City Council's post-filing conduct that has continued and escalated the retaliatory regime: the suppression of the Mayor's lawful agenda submissions, the unauthorized retention of outside counsel to investigate the Mayor without Council authorization, the imposition of an extrajudicial confidentiality directive forbidding the Mayor from speaking about the investigation of him, an *ultra vires* motion at the April 27, 2026 regular meeting to remove the Mayor from office outright, the cancellation of the May 18, 2026 council meeting without statutory authority, the failure to notify the Mayor of a residential structure fire in his own

city, and the failure to notify the Mayor of a June 11, 2026 Economic Development Corporation meeting. The challenged ordinances are void on their face under Texas Local Government Code §§ 22.042, 22.072, and 51.012. The conduct violates the First and Fourteenth Amendments. This is a civil rights case.

## I.  JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The events giving rise to Plaintiff's claims occurred in Balcones Heights, Bexar County, Texas, within the Western District of Texas, San Antonio Division.

4. Plaintiff demands a jury trial on all issues so triable.

## II.  PARTIES

### A. Plaintiff

5. Plaintiff Johnny A. Rodriguez, Jr. is the duly elected Mayor-CEO of the City of Balcones Heights, Texas, a Type A General Law municipality located in Bexar County. As Mayor-CEO, Plaintiff is vested by the Texas Legislature with mandatory statutory duties including serving as chief executive officer, actively ensuring that all laws and ordinances of the municipality are properly carried out, inspecting the conduct of each subordinate municipal officer, and causing any negligence, carelessness, or other violation of duty to be prosecuted and punished. **Tex. Loc. Gov't Code § 22.042.** Plaintiff is also the presiding officer of the governing body of the

municipality. **Id. § 22.037.** Plaintiff serves without monetary compensation. Plaintiff was the only candidate on the May 2, 2026 ballot for Mayor of Balcones Heights and was re-elected to office on that date.

### B. Defendants

6.      Defendant City of Balcones Heights, Texas is a Type A General Law municipality organized under the laws of the State of Texas, located in Bexar County. At all relevant times, the City acted through its governing body—the City Council—which constitutes the City's final policymaking authority. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The City has answered the Original Complaint. *See* **ECF 24**.

7.      Defendant Jack Burton is Mayor Pro Tem, sued in his official and individual capacities. Burton voted for and signed both challenged ordinances. He signed official City documents that should have borne the Mayor's signature as chief executive officer—including Resolution No. 2026-08R authorizing the personnel investigation—and operates as the gate-keeper through whom all city communications with the Mayor are routed under the regime imposed by Ordinance No. 2026-09. Burton has answered.

8.      Defendant Jimmy Hernandez is a City Councilmember, Place 3, sued in his official and individual capacities. Hernandez made the motion to adopt Ordinance No. 2026-09 at the March 9, 2026 Special Called Meeting; voted for Ordinance No. 2026-11 at the March 23, 2026 Regular Meeting; moved to fast-track employment contracts for the Police Chief, City Administrator, and City Secretary at the same March 23 meeting; and stated on the record at that meeting that the express purpose of fast-tracking those contracts was to protect those employees from the Mayor. His own admissions on the record at the March 23 meeting confirmed that direction was given in the March 9 closed session to select the investigative firm and regarding the

substance of the legislative measure subsequently enacted—matters not properly noticed in the March 9 agenda. Hernandez has answered.

9. Defendant David Sellars is a City Councilmember, Place 2, sued in his official and individual capacities. Sellars seconded the motion to adopt Ordinance No. 2026-09 at the March 9, 2026 Special Called Meeting and voted for Ordinance No. 2026-11 at the March 23, 2026 Regular Meeting. At the April 27, 2026 Regular Meeting—after this action had been filed and the parties had appeared before this Court—Sellars moved a second time to remove the Mayor from office, an *ultra vires* act under Texas law. Sellars has answered.

10. Defendant Maria Hernandez is the City Administrator, sued in her official and individual capacities. Hernandez personally brought the missing-police-equipment complaint to Plaintiff's attention in February 2026, asked Plaintiff to help her hold the Police Chief accountable, and then reversed course on March 2, 2026—issuing a directive purporting to insulate the Police Chief from mayoral oversight on the same day that complaints against Plaintiff first emerged. She subsequently enforced the unlawful lockout; personally directed the Police Chief and Assistant Chief to expel Plaintiff from his March 12, 2026 developer meeting under threat of arrest; transmitted the void ordinance to city employees with isolation directives; and was permitted to remain in the March 9 closed session from which Plaintiff was excluded. Since the filing of this action, Hernandez has unilaterally selected and engaged outside counsel (Lloyd Gosselink Rochelle & Townsend, P.C.) to "investigate" Plaintiff without any City Council resolution authorizing that firm's retention; routed Plaintiff's lawful agenda requests through Defendant Burton rather than processing them in the ordinary course; and served as the conduit through which the investigator imposed an extrajudicial confidentiality directive on Plaintiff. Hernandez has answered.

11.     Defendant Cynthia Trevino is the City Attorney, sued in her official and individual capacities. Trevino personally presented undisclosed allegations against the Mayor to the Council in the March 9 closed session from which the Mayor was excluded; personally transmitted Ordinance No. 2026-09 to city employees with isolation directives; acknowledged in writing on March 10, 2026 that a procedural mistake may have been made yet directed continued enforcement; received explicit written notice on March 14, 2026 that the ordinances were void *ab initio* and that federal litigation was imminent, yet took no remedial action; and drafted Ordinance No. 2026-11 citing Texas Local Government Code § 22.072—a provision that on its own terms applies only to officers whose duties are not specified by the Code, while § 22.042 expressly specifies the Mayor's duties. After becoming a named Defendant in this action, Trevino has continued to advise the Council majority on matters squarely adverse to Plaintiff. Trevino has answered.

12.     At all times relevant hereto, all Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

13.     Non-party witnesses include Police Chief Roger Cavazos and Assistant Chief Robert Nelms, whose conduct on March 12, 2026—enforcing the void ordinance by threatening Plaintiff with arrest and physically confining him within a single room on city premises—is direct evidence of the City's enforcement of unconstitutional policy through sworn law enforcement officers. Defendants Cavazos and Nelms were named in the Original Complaint but are not parties to this First Amended Complaint. Their conduct nonetheless remains in the case as evidence supporting Plaintiff's *Monell* claim against the City. Additional non-party witnesses include former Councilmembers Tracy Ebersole and Molly Weaver, who voted against Ordinance No. 2026-11 and have publicly objected to the regime imposed on the Mayor.

## III. FACTUAL BACKGROUND

## A. Statutory Authority—The Legislature Commands, the Council Cannot Prohibit

14. Plaintiff is the duly elected Mayor-CEO of the City of Balcones Heights, a small landlocked enclave city of approximately 3,296 residents located entirely within the boundaries of San Antonio, Texas. He serves without monetary compensation. He was the only candidate on the May 2, 2026 ballot for Mayor and was re-elected to office on that date.

15. The statutory authority of the Mayor of a Type A General Law municipality flows directly and exclusively from the Texas Legislature—not from the City Council. Unlike home rule cities, which possess broad implied powers, Type A general law cities operate under the inverse principle: the council may exercise only those powers the Legislature has expressly granted. **Tex. Loc. Gov't Code § 51.001.**

16. The Legislature has vested in the Mayor of a Type A city mandatory duties that the Council cannot eliminate by ordinance. Section 22.042 provides:

(a) The mayor is the chief executive officer of the municipality. The mayor shall at all times actively ensure that the laws and ordinances of the municipality are properly carried out. The mayor shall perform the duties and exercise the powers prescribed by the governing body of the municipality.

(b) The mayor shall inspect the conduct of each subordinate municipal officer and shall cause any negligence, carelessness, or other violation of duty to be prosecuted and punished.

17.     **Tex. Loc. Gov't Code § 22.042(a)–(b)**. The verb "shall" appears five times in two subsections. These are mandatory commands. The Mayor cannot lawfully choose not to inspect subordinate officers; he is legally obligated to do so.

18.     Section 22.072—the provision the City cites as authority for the challenged ordinances—distinguishes sharply between officers whose duties *are* prescribed by the Code and officers whose duties *are not* specified. Subsection (a) provides: "The governing body of the municipality may require a municipal officer whose duties are prescribed by this code to perform *additional* duties." **Tex. Loc. Gov't Code § 22.072(a)** (emphasis added). Subsection (b) provides: "The governing body may prescribe the powers and duties of a municipal officer appointed or elected to an office under this code whose duties are not specified by this code." *Id.* § 22.072(b).

19.     The Mayor falls under subsection (a), not (b). His duties *are* prescribed by the Code—in § 22.042. The Council's statutory power as to the Mayor is the (a) power: to require him to perform *additional* duties beyond those the Legislature has already imposed. The Council has no statutory power to *subtract* duties the Legislature has imposed, because that power is nowhere in the Code.

20.     Section 51.012, the Type A consistency provision in effect since the original 1987 enactment of the Code, provides expressly: "The municipality may adopt an ordinance, act, law, or regulation, *not inconsistent with state law*, that is necessary for the government, interest, welfare, or good order of the municipality as a body politic." **Tex. Loc. Gov't Code § 51.012** (Acts 1987, 70th Leg., ch. 149, § 1, eff. Sept. 1, 1987). Section 51.012 caps Type A municipal authority—express or implied—at the consistency line. An ordinance that forbids the Mayor from performing a duty § 22.042 commands him to perform is, by definition, not consistent with state

law. The Texas Legislature reinforced this longstanding consistency requirement in 2023 with the enactment of § 51.002, but § 51.012 alone is sufficient to defeat any implied-powers reading.

21. The challenged ordinances do not restrict a discretionary power; they prohibit the Mayor from performing duties the Legislature has commanded him to perform. The very text of Exhibit A to Ordinance No. 2026-09, Section (B), is captioned "*Express limitations on the powers of the Mayor*." The ordinance does not *prescribe* duties; it *proscribes* them. The Texas Local Government Code uses "prescribe" in only one direction—to add, not to subtract.

## B. Police Chief Cavazos — The Hiring, the Contract End-Run, and the Faction

22. Plaintiff hired Roger Cavazos as Police Chief of the City of Balcones Heights with the specific intention of reforming and rebuilding the police department. During the hiring process, Cavazos was asked whether there was anything in his background that would be an embarrassment to the City; he answered no. He was also specifically asked not to engage in direct lobbying of council members; he agreed. These representations were false. The agreement at the time of hiring was clear: no employment contract would be issued immediately. With the City having just balanced its budget, Plaintiff told Cavazos to wait before seeking a contract.

23. Cavazos did not wait, and he did not keep his agreement about council lobbying. Shortly after his hiring, Cavazos began cultivating personal relationships with Councilmembers Burton, Sellars, and Jimmy Hernandez, arranged to have a formal employment contract placed on the council agenda without Plaintiff's knowledge or involvement, and lobbied the council members to approve it. The Council majority approved Cavazos a five-year employment contract with a one-year probationary period at $120,000 annually—$10,000 more than Plaintiff had intended—with exceptional benefits that no prior city employee had received. Plaintiff has since

confirmed that Cavazos was terminated from a prior position at a constable's office—information not disclosed during the hiring process and directly contrary to Cavazos's representation that there was nothing embarrassing in his background.

24. As Plaintiff continued to exercise his § 22.042 oversight responsibilities—requesting operational data, seeking accountability for city resources, and evaluating departmental performance—Cavazos's resistance to that oversight became increasingly apparent. It was in this context that City Administrator Maria Hernandez began raising concerns about Cavazos's conduct directly with Plaintiff.

## C. City Administrator Hernandez Asks the Mayor to Hold the Police Chief Accountable

25. Beginning in February 2026, City Administrator Maria Hernandez—not Plaintiff—brought mounting problems with Cavazos to Plaintiff's attention. Hernandez reported that four police ticket-writing equipment units valued at approximately $12,000 in taxpayer-funded assets had gone missing under Cavazos's watch, that unexplained expenditures were occurring within the police budget, and that the department was not meeting its operational obligations. Hernandez told Plaintiff that she had been unable to hold Cavazos accountable through her own authority and asked Plaintiff to back her up in confronting Cavazos directly. Plaintiff agreed. This was the City Administrator asking the Mayor-CEO to exercise his § 22.042(b) statutory oversight authority on her behalf.

26. Acting at City Administrator Hernandez's request and pursuant to his mandatory statutory duty, Plaintiff met with Cavazos on March 3, 2026 at 3:30 p.m. in Hernandez's office, with Hernandez present. At that meeting, Hernandez presented Cavazos with a written directive in her capacity as City Administrator. Cavazos refused to sign the directive in Plaintiff's presence.

He cited his five-year employment contract as his basis for non-compliance. Plaintiff then issued his own formal written directive dated March 4, 2026, addressed to both Cavazos and Hernandez, demanding an immediate investigation into the missing equipment, establishing investigation milestones, and requiring an interim report within seven working days. Cavazos did not respond. Within days, the same City Administrator who had asked Plaintiff to help her hold Cavazos accountable had reversed course entirely — and the complaints against Plaintiff had emerged.

### D. March 2, 2026—The Pivot

27.     On or about March 2, 2026, two things happened simultaneously that the public record now confirms. First, City Administrator Maria Hernandez issued a directive to Police Chief Cavazos purporting to place him under her direct supervisory authority — a reversal of her prior position and an effort to insulate Cavazos from the mayoral oversight she had herself requested. Second, that same day, the City Administrator was first made aware of the complaints and allegations against Mayor Rodriguez that would become the asserted basis for the March 9 retaliatory special meeting. Resolution No. 2026-08R expressly states that "on or about March 2, 2026, the City Administrator was made aware of certain concerns, complaints and allegations from City Employees against the Mayor." The simultaneous emergence of the insulation directive and the first-known complaints on March 2 establishes that the complaint-collection process and the administrative maneuvering to protect Cavazos were coordinated from the outset. What is most telling is what Hernandez did not do: despite being in possession of these complaints against Plaintiff on March 2, 2026, she did not disclose them to Plaintiff at the March 3, 2026 meeting she had arranged with Cavazos. She sat through that meeting, watched Plaintiff confront Cavazos on her behalf, went through the motions of holding the Chief accountable, and said nothing.

### E. March 3–4, 2026—The Mayor Performs His Mandatory Statutory Duty

28.     On March 3, 2026, Plaintiff met with Police Chief Cavazos and City Administrator Hernandez and personally confronted Cavazos about the missing equipment—the mandatory performance of his § 22.042(b) duty to inspect subordinate officers. Cavazos refused to comply. The following day, March 4, 2026, Plaintiff issued a formal written directive to both Cavazos and Hernandez demanding an immediate investigation into the disappearance of the four police ticket-writing equipment units. Six days after the March 3 confrontation, five days after the March 4 directive, the City Council responded by enacting an ordinance prohibiting the Mayor from communicating with the very subordinate officers he is required by state law to inspect. The March 3 meeting and the March 4 directive also constituted speech and petitioning activity on a matter of significant public concern — stewardship of taxpayer-funded assets—protected by the First Amendment.

### F. March 9, 2026 — The Special Called Meeting

29.     On March 9, 2026—six days after the March 3 confrontation and five days after Plaintiff's March 4 oversight directive — the City Council held a Special Called Meeting. The publicly posted agenda did not disclose that any ordinance or resolution restricting the Mayor's powers and duties would be considered at that meeting. The agenda did not identify Mayor Rodriguez by name as the subject of any charge or complaint to be heard. Plaintiff was not informed that any action concerning his authority was being considered.

30.     The Council entered closed session at 6:24 p.m. Plaintiff was excluded. Before being excluded, he was not provided with the specific allegations against him, the identity of any complainants, copies of any written complaints, the identity of any witnesses, or any of the

supporting materials subsequently presented to the Council in his absence. City Administrator Maria Hernandez was permitted to remain in the closed session while Plaintiff was excluded.

31. The Council reconvened in open session at 8:37 p.m. Councilmember Hernandez moved to approve and adopt "Resolution No. 2026-07-R." Councilmember Sellars seconded the motion. The word "ordinance" was never used by any speaker during the open session. The motion passed 5-0. The certified minutes of the March 9, 2026 Special Called Meeting confirm this account.

32. The following day, March 10, 2026, City Attorney Cynthia Trevino transmitted to Plaintiff a document titled *Ordinance* No. 2026-09—not a resolution. Trevino's transmittal email acknowledged that the motion may have been for a resolution but the document was in the form of an ordinance.

33. Ordinance No. 2026-09 purported to restrict the Mayor's powers by: (a) prohibiting any direct communication with city staff, consultants, or the City Attorney without express written City Council consent; (b) requiring all mayoral communications to be routed through Mayor Pro Tem Burton; (c) restricting the Mayor's physical presence at City Hall to windows of thirty (30) minutes before and thirty (30) minutes after each *council meeting*; and (d) prohibiting the Mayor from taking any adverse action against city officers or employees without City Council consent. Exhibit A to the ordinance, Section (B), is titled "*Express limitations on the powers of the Mayor*." These restrictions directly contradict §§ 22.042(a) and (b), and are therefore void under § 51.012.

34. The access bar warrants particular attention. Because council meetings are held approximately once per month, the ordinance's effect is not to limit the Mayor's access to City Hall — it is to prohibit it entirely, with a narrow monthly exception. On every ordinary working day, the elected chief executive officer of the City is not permitted to enter the building he is

charged by state law with overseeing. The practical effect is *de facto* removal from office while leaving the title in place.

35. The communication ban is also a complete prohibition, not a regulation of channels. By its terms, the ordinance does not authorize the Mayor to communicate directly with any city employee, consultant, or the City Attorney by *any* means without express written City Council consent. The purported "alternative channel" through Mayor Pro Tem Burton is not a channel of direct communication — it is a third-party intermediary controlled by one of the Council members who voted to silence the Mayor.

## G. The Physical Lockout, the Arrest Threat, and the City's Enforcement Through Sworn Law Enforcement

36. Following the passage of Ordinance No. 2026-09, Plaintiff's building entry access card was deactivated and his parking access code was deactivated. These acts—physical deactivation of the Mayor's access credentials—are not authorized by any provision of Ordinance No. 2026-09 or by any other valid legal authority. The lockout exceeded the scope of even the void ordinance itself.

37. On March 12, 2026, Plaintiff was attending a meeting with Wonderland of the Americas (WOTA) developers and investors on city premises—a meeting directly related to Plaintiff's ongoing efforts, as Mayor-CEO, to resolve the City's $5.4 million Economic Development Corporation investment. During this meeting, Defendant Maria Hernandez intervened, contacting Police Chief Roger Cavazos and directing him and Assistant Chief Robert Nelms to require Plaintiff to leave. Cavazos and Nelms appeared and informed Plaintiff he was not authorized to be on the premises, threatening him with arrest if he refused to leave. Plaintiff verbally notified them that they were enforcing a defective and illegal ordinance. His objection

was disregarded. Plaintiff proceeded to a conference room on the second floor to conduct the WOTA developer meeting. In direct response, sworn law enforcement officers locked all doors to the restrooms, hallways, and administrative offices—physically confining the elected Mayor-CEO of the City within a single room and denying him access to the building's common areas. Plaintiff ultimately left the premises.

38.     The meeting Defendants disrupted on March 12, 2026 was a WOTA developers and investors meeting—not a City Council meeting. Ordinance No. 2026-09 bars the Mayor from City Hall at all times, with one narrow exception: the thirty-minute windows before and after a council meeting. The arrest threat was made for being present on premises at a time when even the void ordinance's own terms did not prohibit his presence.

39.     Since March 12, 2026, Plaintiff has entered City Hall on only a small number of occasions, all tied to council meetings he is statutorily required to preside over. He has not attempted to reenter at any other time because of a well-founded, objectively reasonable fear of arrest by sworn law enforcement officers acting under color of state law.

40.     The conduct of Police Chief Cavazos and Assistant Chief Nelms on March 12, 2026 was conduct of the City, undertaken in their official capacities and pursuant to direction from Defendant Maria Hernandez. The conduct is direct evidence of the City's enforcement of the void ordinance through sworn law enforcement and supports Plaintiff's *Monell* claim against the City for adoption and implementation of an unconstitutional municipal policy.

## H. The Communication Ban and Employee Isolation

41.     Defendants Hernandez and Trevino transmitted Ordinance No. 2026-09 to city employees with directions that all communications with the Mayor must be routed through Mayor Pro Tem Burton. All direct communications from city employees to Plaintiff ceased as a result.

The Mayor no longer receives routine correspondence, notifications, or information about city operations he is statutorily required to oversee.

## I. Usurpation of Mayoral Document-Signing Authority

42.     At the March 23, 2026 Regular City Council Meeting, Mayor Rodriguez was permitted to sign one proclamation. All other official City documents from that meeting—ordinances, resolutions, contracts, and instruments—that would ordinarily require the Mayor's signature were instead signed by Mayor Pro Tem Jack Burton with Burton's signature block substituted for the Mayor's. Resolution No. 2026-08R—the resolution authorizing the personnel investigation into the Mayor himself—was signed by Burton. No valid ordinance or provision of state law authorizes this substitution.

## J. March 23, 2026 — The Council Doubles Down and Secures the Faction

43.     At the March 23, 2026 Regular City Council Meeting, the Council majority passed Ordinance No. 2026-11, which purported to "ratify" Ordinance No. 2026-09 and impose additional restrictions. The Council simultaneously enacted Resolution No. 2026-08R authorizing an investigation by "The Austin Institute, LLC"—signed by Burton, not Rodriguez. The Austin Institute, LLC has held a status of Forfeited Existence with the Texas Secretary of State since 2020 and was incapable of accepting the engagement.

44.     Ordinance No. 2026-11 is independently void for multiple reasons. First, a void act cannot be ratified. Second, the ordinance's own recitals cite **Texas Local Government Code § 22.072** as authority—but § 22.072(b) applies only to officers "whose duties are not specified by this code," and § 22.042 expressly specifies the Mayor's duties. Third, Ordinance No. 2026-11 is subject to the same TOMA notice deficiencies as its predecessor.

45.     Ordinance No. 2026-11 contains an additional, independently dispositive defect: its operative term. Section 3 of Ordinance No. 2026-11 provides that the limitations "shall remain in effect during the third-party investigation into the complaints and allegations against the Mayor is completed [sic] *or further order of the City Council, whichever occurs last*." The phrase "whichever occurs last" is dispositive. The restrictions do not lift automatically upon completion of the investigation. They continue until the Council majority that imposed them affirmatively votes to lift them. Defendants have repeatedly characterized the restrictions as "temporary." They are not. The restrictions are indefinite by the ordinance's own terms.

46.     At the same March 23, 2026 meeting where the Council passed Ordinance No. 2026-11—stripping the Mayor's oversight authority for the second time—the Council also voted to waive the probationary period and fast-track employment contracts for Police Chief Cavazos, City Administrator Hernandez, and City Secretary Bravo. Councilmember Jimmy Hernandez stated on the record, in the open session of that meeting, that the express purpose of fast-tracking these contracts was to protect those employees from the Mayor — to ensure that if any of them were to be terminated, it would require a council majority vote rather than being "left to one individual." That admission is direct evidence of retaliatory motive in the words of one of the Defendants.

47.     At the same March 23 meeting, Councilmember Jimmy Hernandez acknowledged on the record that direction had been given in the March 9 closed session regarding the substance of the legislative measure subsequently enacted and the selection of the investigative firm — matters not properly noticed in the March 9 agenda. The closed session had been cited in part to Texas Government Code § 551.072(2), a real-property provision, for deliberations having nothing to do with real property.

### K. The Lloyd Gosselink "Investigation"—No Council Authorization, Defendant-Directed Selection, and the Extrajudicial Gag Order

48. Resolution No. 2026-08R, approved at the March 23 meeting, purported to retain "The Austin Institute, LLC" to conduct the personnel investigation. As pled above, The Austin Institute, LLC has held a Forfeited Existence status with the Texas Secretary of State since 2020 and was incapable of accepting the engagement.

49. Without further Council resolution, ordinance, or other action authorizing the retention of a substitute firm, Defendant Maria Hernandez engaged Lloyd Gosselink Rochelle & Townsend, P.C. to conduct the investigation. No City Council resolution authorizes Lloyd Gosselink's retention. No certified minutes record a Council vote on the retention. No engagement letter has been disclosed. Plaintiff has, through counsel, demanded production of these materials; the demands have not been honored. Most recently, on May 26, 2026, Plaintiff demanded production of "a copy of the council resolution, ordinance, or other action authorizing Lloyd Gosselink Rochelle & Townsend's retention; certified minutes and the recording vote; engagement letter and any amendments; and identification of who within the city directed and approved retention of their services." As of the filing of this First Amended Complaint, that demand has not been honored.

50. On April 22, 2026, Laura Ingram of Lloyd Gosselink transmitted to Plaintiff an interview request. That communication imposed on Plaintiff a written directive purporting to forbid him from "discuss[ing] the City's investigation of him with anyone other than his attorney." That is an extrajudicial confidentiality directive imposed on a sitting elected officeholder on a matter of significant public concern, without notice, hearing, or any judicial determination.

51.     Plaintiff, through counsel, responded by requesting basic procedural information about the investigation—the scope, the authorizing instrument, the identity of complainants, the evidentiary basis, and the procedural safeguards—and conditioning Plaintiff's cooperation on the provision of that information. The investigator declined to coordinate through normal channels, refused to provide the requested information, and continued to insist on Plaintiff's interview without disclosing the basis or scope of the inquiry. The exchanges continued through at least May 14, 2026. As of the filing of this First Amended Complaint, no substantive investigation has been conducted; Plaintiff has not been interviewed; no report has been issued; and the investigation's scope and authorization remain undisclosed. The defense representation to this Court at the May 1, 2026 preliminary-injunction hearing that the investigation would be complete within thirty days of the hearing has been falsified by the passage of time.

### L.  April 27, 2026 — Post-Filing Retaliation Continues

52.     On April 27, 2026, the City Council convened in regular session. At that meeting, with the federal lawsuit pending and after the parties had already begun briefing the preliminary-injunction motion, Defendant Sellars moved a second time to remove Plaintiff from office. Texas law does not authorize the Council to remove an elected official. *State ex rel. Angelini v. Hardberger*, 932 S.W.2d 489, 490 (Tex. 1996); Tex. Civ. Prac. & Rem. Code § 66.002. The motion was *ultra vires* on its face. Councilmembers Ebersole and Weaver broke quorum in protest, terminating the meeting before further action could be taken.

53.     At and around the April 27, 2026 meeting, Defendant Trevino—who had by that date been a named Defendant in this lawsuit for approximately nineteen days—continued to advise the Council majority on matters squarely adverse to Plaintiff. Defendant Trevino communicated with at least one councilmember about the federal litigation in terms reflecting that she was acting

both as a defendant herself and as the lawyer providing advice to the Council majority on the same litigation, in disregard of her own conflict of interest.

54. Laura Ingram of Lloyd Gosselink appeared at or in connection with the April 27, 2026 meeting in her purported capacity as outside investigator. The Council had not, before April 27 or at the April 27 meeting itself, adopted any resolution specifically authorizing Lloyd Gosselink's retention. The executive-session notice for the April 27 meeting was itself defective under TOMA: the citation to consultation-with-attorney privileges did not properly notice deliberations on the substantive findings of the investigation, and Defendant Trevino — who was herself a named Defendant in the federal litigation by April 27 — nonetheless participated in the closed-session discussions.

## M. May 3, 2026 — Ex Parte Contact with the Represented Plaintiff

55. On May 3, 2026 — the day after Plaintiff was re-elected to the office of Mayor with no opposition — Defendant Jimmy Hernandez transmitted to Plaintiff a personal email styled as an "olive branch," in which Defendant Hernandez proposed direct communication and reconciliation outside the channels established by the very ordinances Defendant Hernandez had voted for. The communication was *ex parte* contact with a represented party in pending federal litigation. Plaintiff did not respond and forwarded the communication to counsel.

## N. May 7–13, 2026 — The Agenda Suppression

56. On May 7, 2026, Plaintiff emailed City Secretary Joe Bravo requesting confirmation of the deadline for placement of items on the agenda for the May 18, 2026 Regular City Council Meeting. Plaintiff is the elected presiding officer of the governing body. Tex. Loc. Gov't Code § 22.037(b)(2). He has a statutory and First Amendment right to place lawful items on the agenda of the body over which he presides.

57. On Monday, May 11, 2026 at 1:47 p.m., Plaintiff transmitted to City Secretary Joe Bravo (with Defendant Burton copied) his agenda submissions for the May 18, 2026 meeting. The submissions included twelve agenda items, each labeled "Discussion and action" and falling within the Mayor's statutory and constituent-representation responsibilities, including: an update on a $250,000 federal grant for a senior citizens community center awarded through Congressman Joaquin Castro; concerns within the Balcones Heights Police Department, including employee pay equity, disciplinary procedures, and ongoing internal reviews; the Balcones Heights Police Collective Bargaining Agreement; the Gentleman Road Hike and Bicycle Lane Project; the Fiscal Year 2026–2027 City Budget and a department-by-department report on authorized positions, salaries, and pay raises; emergency preparedness planning; police reserve officer policies; the waiver of city fees and permit requirements; a financial accounting of the Balcones Heights Tejano Music Fest; Rogiers Park improvements; the development of an online public transparency portal; and, as Item 10, "a complaint concerning the use of hotel occupancy tax (HOT) and or City Funds allocated to the Balcones Heights Tejano Music Fest for the purpose of securing and operating a vendor booth used to promote the political campaigns of Jack Burton, mayor pro tem and council candidate Juan Lecea during the City of Balcones Heights May 2, 2026 early voting period and general election cycle."

58. Mr. Bravo did not respond to Plaintiff. At 2:12 p.m. on the same day, Mr. Bravo forwarded Plaintiff's submissions to Defendant Maria Hernandez. At 4:24 p.m. on the same day, Defendant Maria Hernandez routed her substantive reply to Plaintiff *through Defendant Burton*— the same Mayor Pro Tem who voted for the void ordinances and who functions as the operational gate-keeper for all communications with Plaintiff under the regime imposed by Ordinance No. 2026-09. At 5:25 p.m., Defendant Burton forwarded Defendant Hernandez's reply to Plaintiff.

Defendant Hernandez's reply asserted that Plaintiff's submissions were untimely under "Ordinance 2019-02 council relations Policy and code of ethics, Section V. City Council Meeting Information B.2.c," a six-business-day pre-meeting deadline applicable to *councilmember* submissions. The reply offered to add Plaintiff's items to the June council meeting agenda.

59. Among the twelve agenda items suppressed was a constituent complaint concerning Defendant Burton's and at least one other elected official's use of municipal Hotel Occupancy Tax ("HOT") funds and/or other city funds for a vendor booth at City Hall during the May 2, 2026 municipal election in support of Defendant Burton's and another candidate's re-election campaigns. Defendant Burton was therefore inserted, via the very communication regime he voted to enact, as the intermediary controlling whether and when a constituent complaint about Defendant Burton's own conduct would be heard by the governing body. That is not a content-neutral regulation. It is the regime operating precisely as Plaintiff has alleged it was designed to operate: as a viewpoint-discriminatory restraint on the Mayor's protected speech in the body over which he presides, administered by the political adversaries the speech was directed at.

## O. May 18, 2026—Meeting Cancellation, Fire Emergency Notification Failure

60. The regularly scheduled May 25, 2026 City Council meeting was rescheduled to May 18, 2026 without any Council resolution or governing-body authorization that has been disclosed to Plaintiff.

61. The May 18, 2026 meeting was canceled for asserted lack of quorum. Mayor Rodriguez was not notified of the cancellation by the City Secretary, the City Administrator, the Mayor Pro Tem, or any other City official. He learned of the cancellation from another councilmember at approximately 5:30 p.m. that evening, shortly before the scheduled meeting

time. The cancellation was effected by the City Secretary unilaterally. The City Secretary has no statutory authority to cancel a meeting of the governing body. Tex. Loc. Gov't Code § 22.038.

62.     On the same evening of May 18, 2026, the Balcones Heights Fire Department responded to a residential structure fire in the 200 block of Bobbies Lane. Mayor Rodriguez was not notified of the emergency by City Administration, Fire leadership, Police personnel, or any other City official. He learned of the emergency from a constituent. Upon arriving at the scene, the Mayor observed that the City Administrator, the City's Community Engagement Manager, and at least one councilmember were already present. The Mayor personally assisted the displaced homeowner in contacting his insurance carrier and securing emergency housing, in the absence of any apparent City response to the homeowner's immediate needs. The City's subsequent official Facebook post regarding the fire acknowledged mutual-aid partners and the Balcones Heights Police Department but did not acknowledge the elected Mayor.

63.     Defendant Burton's absence from the May 18, 2026 meeting was, on information and belief, the cause of the lack of quorum that triggered the cancellation. Defendant Burton was, however, publicly active on social media on May 18, 2026—including by publicly commenting on the City of Balcones Heights' official Facebook post regarding the residential fire—in a manner inconsistent with any asserted incapacity to attend the meeting.

### P.  May 26, 2026—The EDC Notification Failure

64.     On May 26, 2026, Plaintiff inquired of City Secretary Joe Bravo whether anyone had communicated with him regarding the June 11, 2026 Economic Development Corporation meeting, its attendance, or its agenda. Mr. Bravo did not respond directly to Plaintiff. Instead, Mr. Bravo forwarded the Mayor's inquiry to Defendant Burton, who forwarded Mr. Bravo's substantive response to Plaintiff. The response disclosed for the first time that the EDC Chair

(Roger Enriquez) had requested member attendance confirmation, had attached a Memorandum of Understanding for consideration, and had set the meeting for June 11, 2026—information that was not communicated to the Mayor in advance through any direct channel. Plaintiff's contemporaneous response captured the substance: "but for my inquiry, I would never have known about the existence of this meeting, why is that??" The exchange demonstrates that the routing-through-Burton regime is now operating not only to suppress the Mayor's *outgoing* speech but to suppress the Mayor's *incoming* official information—a complete informational quarantine.

## Q. Indefinite Duration and Ongoing Harm

65. As pled above, Ordinance No. 2026-11 provides on its face that the restrictions remain in effect "during the third-party investigation into the complaints and allegations against the Mayor is completed [sic] or further order of the City Council, whichever occurs last." The same Council majority that enacted the restriction is also responsible for the "further order" termination trigger. As of the date of this First Amended Complaint—more than two months after the enactment of Ordinance No. 2026-09 and more than two months after the enactment of Ordinance No. 2026-11—the lockout, communication ban, document-signing usurpation, and access deactivations remain fully in effect.

66. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer: (a) complete exclusion from City Hall and municipal facilities due to reasonable fear of arrest; (b) inability to communicate directly with city staff, the City Attorney, or city consultants in performance of statutory duties; (c) inability to retrieve official mail or access official correspondence; (d) usurpation of his document-signing authority as chief executive officer; (e) severe reputational harm from the public nature of the retaliatory conduct; (f) emotional distress, mental anguish, humiliation, and dignitary harm; (g) ongoing deprivation of the citizens

of Balcones Heights of the effective governance of their duly elected Mayor-CEO; (h) inability to manage or oversee implementation of a $250,000 federal grant awarded to the City of Balcones Heights through the office of Congressman Joaquin Castro for a senior citizens community center; (i) cancellation of at least one scheduled EDC meeting due to Plaintiff's inability to attend as a direct consequence of the ongoing lockout; (j) suppression of the Mayor's lawful agenda submissions and the routing of agenda decisions through a political adversary; (k) the imposition of an extrajudicial confidentiality directive purporting to forbid the Mayor from speaking publicly about the very investigation his political opponents have initiated against him; and (l) the systematic withholding of incoming information about official municipal events from the Mayor.

## IV.    LEGAL FRAMEWORK

67.    42 U.S.C. § 1983 provides a federal remedy for the deprivation, under color of state law, of rights secured by the Constitution or laws of the United States. All Defendants acted under color of state law at all relevant times.

68.    Municipal liability under § 1983 attaches when a municipal employee commits a constitutional violation pursuant to a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The City Council is the City's final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The void ordinances are official City policy and form the basis for *Monell* liability.

69.    The First Amendment prohibits government officials from retaliating against individuals for engaging in constitutionally protected activity. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Elected officials are afforded robust First Amendment protection against retaliatory action by their colleagues. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022); *Bond v.*

*Floyd*, 385 U.S. 116, 135–36 (1966); *Jenevein v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007); *Gonzalez v. Trevino*, 602 U.S. 653 (2024).

70.     This Court has previously applied these principles to enjoin retaliatory conduct by municipal officials against an elected official on materially analogous facts. *Bradshaw v. Salvaggio*, No. SA-20-CV-01168-FB, 2020 WL 8673836 (W.D. Tex. Oct. 28, 2020) (Chestney, M.J.), R&R adopted, 2020 WL 8673835 (W.D. Tex. Oct. 30, 2020) (Garcia, J.). The framework of *Bradshaw* controls here.

71.     The structural invalidity of the challenged ordinances under Texas law is not a close question. Type A general law municipalities possess only those powers the Legislature has expressly granted. **Tex. Loc. Gov't Code § 51.001**; *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 535 (Tex. 2016). Section 51.012—in effect since the original 1987 enactment of the Code—voids any ordinance "inconsistent with state law," and operates as an express consistency cap on Type A municipal authority regardless of whether the asserted power is express or implied. The Legislature reinforced this longstanding consistency requirement with the 2023 enactment of § 51.002. The ordinances purport to draw their authority from § 22.072, which authorizes the council to prescribe duties of officers "whose duties are not specified by this code." § 22.072(b). Section 22.042 expressly specifies the Mayor's duties. The applicable subsection of § 22.072 is therefore (a), which authorizes the council to require an officer whose duties *are* specified to perform *additional* duties — not to subtract them. § 22.072(a).

## V.  CAUSES OF ACTION

### COUNT I: 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION
### (Against All Defendants)

72.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

73. **Legal Standard.** To establish First Amendment retaliation under § 1983, a plaintiff must show: (1) protected activity; (2) adverse action causing injury that would chill a person of ordinary firmness from continuing in that activity; and (3) substantial motivation by the protected activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Haverda v. Hays Cnty.*, 723 F.3d 586, 591–92 (5th Cir. 2013). The chilling-effect standard is calibrated to the elected-official context: a reasonable elected official acting in furtherance of statutory and constituent-representation duties. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022). The *Pickering-Garcetti* limitations on public-employee speech do not apply to elected officials. *Jenevein*, 493 F.3d at 558.

74. **Protected Activity.** Plaintiff engaged in constitutionally protected activity, including: his March 4, 2026 formal written directive demanding an investigation into the disappearance of approximately $12,000 in taxpayer-funded police equipment; his public statements at City Council meetings challenging the Council majority's conduct; his March 10 and March 14, 2026 formal written demands for clarification of the legal authority for the challenged ordinances; his exercise of statutory authority to call a Special Meeting of the Governing Body; his filing and prosecution of this federal civil rights action; his May 7 and May 11, 2026 submissions of items to the May 18, 2026 City Council agenda, including a constituent complaint concerning the use of City funds in connection with the campaign of Defendant Burton; and his ongoing performance of mandatory statutory duties under § 22.042.

75. **Adverse Actions.** Defendants took the following adverse actions, each of which would chill a reasonable elected official of ordinary firmness from continuing in protected activity, and which have in fact chilled Plaintiff: (a) Defendants Burton, Jimmy Hernandez, and Sellars enacted Ordinance Nos. 2026-09 and 2026-11; (b) Defendant Maria Hernandez deactivated

Plaintiff's building entry access card and parking access code, and directed Police Chief Cavazos and Assistant Chief Nelms to confront and expel Plaintiff from the March 12 WOTA meeting under threat of arrest; (c) the City, through sworn law enforcement officers acting under color of state law, enforced the void ordinance by threatening to arrest the elected Mayor on city premises during the March 12, 2026 developer meeting; (d) Defendants Trevino and Maria Hernandez transmitted Ordinance No. 2026-09 to city employees with directives that all communications with the Mayor be routed through Mayor Pro Tem Burton; (e) Defendant Burton signed Resolution No. 2026-08R and other official City documents with his signature block substituted for Plaintiff's; (f) the Council fast-tracked employment contracts at the March 23 meeting with Councilmember Hernandez stating on the record the express purpose was to protect city employees from the Mayor; (g) Defendant Maria Hernandez unilaterally retained Lloyd Gosselink without Council authorization and the investigator imposed an extrajudicial confidentiality directive on Plaintiff on April 22, 2026; (h) Defendant Sellars' April 27, 2026 motion to remove Plaintiff from office—an *ultra vires* act; (i) the City, through Defendants Maria Hernandez and Burton, on May 11, 2026 suppressed twelve agenda items submitted by Plaintiff for the May 18, 2026 City Council meeting, including a constituent complaint directed at Defendant Burton's own conduct; and (j) the City's ongoing failure to provide Plaintiff with notice of official municipal events and meetings, including the June 11, 2026 EDC meeting of which Plaintiff received notice only after his own May 26, 2026 inquiry.

76. **Causation.** The adverse actions were substantially motivated by Plaintiff's protected activity, established by multiple independent grounds: (a) the six-day interval between the March 3 confrontation with Cavazos and the March 9 special meeting, and the five-day interval between the March 4 directive and that meeting, *McCoy v. City of Shreveport*, 492 F.3d 551, 562

(5th Cir. 2007) (close temporal proximity can independently establish causation); (b) the coordinated simultaneous emergence on March 2, 2026 of both the Cavazos-insulation directive and the first-known complaints against the Mayor; (c) the self-interested nature of the complainants—subordinate employees subject to the Mayor's mandatory § 22.042(b) oversight whose contracts were fast-tracked at the very meeting that stripped the Mayor's authority; (d) Councilmember Jimmy Hernandez's on-the-record statement at the March 23 meeting that the purpose of fast-tracking the employee contracts was expressly to protect those employees from the Mayor—direct evidence of retaliatory motive in the words of one of the Defendants; (e) the *post-filing* continuing acts: the April 27 Sellars removal motion, the May 7–13 agenda suppression specifically targeting a complaint about Defendant Burton, the May 18 meeting cancellation and fire-emergency notification failure, the May 26 EDC-notification failure, and the ongoing imposition of the confidentiality directive; and (f) the absence of any application of these measures to the Council majority itself, which has faced its own publicly raised allegations of misconduct without comparable consequences.

77. **Municipal Liability.** The City of Balcones Heights is liable under *Monell* because: (a) the City Council is the City's final policymaking authority; (b) the retaliatory conduct was carried out pursuant to official City policy—the void ordinances enacted by that body; and (c) the lockout, the March 12 arrest threat by sworn law enforcement officers acting on city direction, the communication ban, the document-signing usurpation, the employee contract fast-tracking, the agenda suppression, and the unauthorized investigation were each carried out pursuant to and in implementation of those official policies.

78. **Individual Defendant Liability.** Each individual Defendant in his or her individual capacity personally participated in the First Amendment retaliation as identified above.

Defendant Trevino personally participated through: presenting undisclosed allegations to the Council in the March 9 Closed Session; transmitting the void ordinances with enforcement directives; acknowledging procedural defects in writing while continuing enforcement; receiving explicit written notice on March 14, 2026 that the ordinances were void *ab initio* and taking no remedial action; drafting Ordinance No. 2026-11 citing a statutory provision that on its own terms cannot apply to the Mayor's office; and continuing to advise the Council majority on matters adverse to Plaintiff after becoming a named Defendant. These are implementation acts, not legal advice.

79.     **Damages.** As a direct and proximate result of the foregoing, Plaintiff has suffered reputational harm, emotional distress, mental anguish, humiliation, dignitary harm, and ongoing deprivation of his constitutional rights. Plaintiff is entitled to compensatory damages, nominal damages, punitive damages against individual Defendants in their personal capacities, injunctive and declaratory relief, and attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT II: 42 U.S.C. § 1983 — FIRST AMENDMENT PRIOR RESTRAINT
#### (Against All Defendants)

80.     Plaintiff incorporates all preceding paragraphs.

81.     In enacting, transmitting, and enforcing the void ordinances—and in imposing on Plaintiff the extrajudicial confidentiality directive and suppressing the agenda items he sought to place before the governing body—Defendants imposed impermissible prior restraints on Plaintiff's First Amendment rights to speak, petition, and assemble, in violation of 42 U.S.C. § 1983.

82.     **Prior Restraint Doctrine.** A prior restraint is a governmental restriction imposed in advance of expression that prevents speech, assembly, or petition from occurring at all. *Near v. Minnesota*, 283 U.S. 697, 713 (1931). Prior restraints bear a heavy presumption against their

constitutional validity. This Court has previously found that a complete ban on an individual's presence at City Hall, imposed without procedural safeguards, constitutes an impermissible prior restraint. *Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 U.S. Dist. LEXIS 43145, at *10–11 (W.D. Tex. Mar. 27, 2013).

83.     **Theory One — Communication Ban as Complete Prior Restraint.** The ordinance prohibits the Mayor from any direct communication with any city employee, consultant, or the City Attorney without the express written consent of the City Council. The purported routing through Mayor Pro Tem Burton is not an alternative channel of speech; it is a third-party intermediary controlled by a political adversary. A licensing scheme conditioning expression on advance government permission is constitutional only if it operates under procedural safeguards designed to prevent censorship. *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004). The City Council's written-consent requirement contains no procedural safeguards: no defined criteria, no neutral decisionmaker, no time limit on Council consideration, no presumption of approval, no review mechanism, and no judicial check.

84.     **Theory Two — Physical Access Bar as Prior Restraint.** Ordinance No. 2026-09 bars Plaintiff from City Hall except within 30-minute monthly windows tied to council meetings. For an elected official whose statutory duties under § 22.042 require him to be physically present, this near-total exclusion is a prior restraint on his ability to exercise his First Amendment rights in the very building where those rights must be exercised to have meaning. *Cuellar*, 2013 U.S. Dist. LEXIS 43145, at *9–11.

85.     **Theory Three — Extrajudicial Confidentiality Directive as Standalone Prior Restraint.** On April 22, 2026, the City—acting through outside counsel selected by Defendant Maria Hernandez—imposed on Plaintiff a written directive purporting to forbid the Mayor from

discussing the City's investigation of him with anyone other than his attorney. That is a content-based prior restraint on the speech of an elected officeholder on a matter of significant public concern, imposed without notice and without any judicial determination.

86. **Theory Four — Agenda Suppression as Prior Restraint.** On May 11, 2026, the City, acting through Defendants Maria Hernandez and Burton, suppressed twelve items Plaintiff sought to place on the May 18, 2026 City Council agenda—including a constituent complaint concerning Defendant Burton's own conduct—by pushing them to the June 2026 meeting via a communication routed through Defendant Burton. The Mayor's right to place items on the agenda of the body over which he presides is itself First Amendment-protected speech and petitioning activity. The suppression is both viewpoint-discriminatory and a prior restraint without procedural safeguards.

87. **Theory Five — Informational Quarantine as Prior Restraint.** Following the May 7–13 agenda suppression sequence, Defendants have extended the routing regime to *incoming* information as well: as documented by the May 26, 2026 EDC communication, the Mayor receives notice of municipal events only when he affirmatively inquires, and only through Defendant Burton as intermediary. The systematic suppression of incoming official information—of meetings the Mayor presides over by statute, of fire emergencies in his own city, of EDC matters in which the City has a $5.4 million investment—is itself a restraint on the Mayor's ability to perform his protected speech functions as the elected presiding officer of the governing body.

88. **The "Temporary" Premise Is Contradicted by the Ordinance's Own Text and by the Passage of Time.** Defendants have repeatedly characterized the restrictions as "temporary." They are not. Ordinance No. 2026-11 provides on its face that the restrictions remain in effect "during the third-party investigation . . . is completed [sic] *or further order of the City Council,*

*whichever occurs last.*" The restrictions are indefinite by their own terms. Defense counsel's representation that the investigation would be complete within 30 days of the May 1, 2026 preliminary-injunction hearing has been falsified by the passage of time: as of the filing of this First Amended Complaint, the investigation has not begun in any substantive sense; no interview of Plaintiff has been conducted; no report has issued; and the investigator has refused to coordinate through normal channels or provide documentation of its retention authority.

89.     **Viewpoint Discrimination.** The communication ban and the agenda-routing requirement do not regulate communication generally; they regulate the speech of one identified speaker—the Mayor—and route that speech through one identified intermediary—the Mayor Pro Tem. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Wilson*, 595 U.S. at 478.

90.     **Damages.** Plaintiff has suffered ongoing deprivation of his First Amendment rights, complete suppression of his official speech, reputational harm, emotional distress, and dignitary harm. Plaintiff is entitled to declaratory relief, injunctive relief, compensatory and nominal damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT III: 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
### (Against All Defendants)

91.     Plaintiff incorporates all preceding paragraphs.

92.     **Legal Standard.** To establish procedural due process deprivation: (1) deprivation of a protected liberty or property interest; (2) without adequate process.

93.     **Protected Interests.** Plaintiff has a property interest in the exercise of the powers and functions of his elected office, *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979); a liberty interest in being in a public place of his choice, *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999);

and a liberty interest in his reputation in connection with the governmental action publicly stripping him of his official functions, *Paul v. Davis*, 424 U.S. 693, 701 (1976).

94.     **Process Due and Received.** Before depriving Plaintiff of these interests, due process required prior written notice of specific allegations; disclosure of complainants' identities; disclosure of evidence to be presented; an opportunity to respond; a neutral decisionmaker; and defined criteria. Plaintiff received none of these. Defendant Trevino personally presented the allegations in the March 9 Closed Session from which Plaintiff was excluded. Defendant Maria Hernandez was permitted to remain in that session while Plaintiff was excluded. The Council Defendants sat as interested parties rather than neutral decisionmakers. The subsequent Lloyd Gosselink "investigation"—initiated without lawful Council authorization, directed at its inception by a Defendant, and conducted under an extrajudicial gag order on the Plaintiff-Mayor—does not cure the lack of process; it compounds it.

95.     **Damages.** Plaintiff is entitled to compensatory and nominal damages, injunctive and declaratory relief, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT IV: 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS / DE FACTO REMOVAL
### (Against All Defendants)

96.     Plaintiff incorporates all preceding paragraphs.

97.     **Legal Standard.** Substantive due process bars "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Castille v. Port Arthur ISD*, 168 F.4th 240, 253 (5th Cir. 2026) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Plaintiff "must demonstrate that the abuse of power by the state official shocks the conscience." *Id.* Conduct that shocks the conscience is conduct that "violates the decencies of civilized conduct"; "is so brutal and offensive that it does not comport with traditional ideas of fair

play and decency"; "interferes with rights implicit in the concept of ordered liberty"; and "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 253–54 (quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc)).

98. **This Case Is Categorically Different from *Castille* and the Run of Substantive Due Process Cases.** *Castille* involved a school district administrator who received pre-termination notice, a hearing examiner, an evidentiary hearing, and an administrative appeal to the Texas Commissioner of Education. 168 F.4th at 252–53. The Fifth Circuit held those facts did not surmount the "shock the conscience" bar. *Id.* at 253–54. This case is categorically different. Plaintiff is a sitting elected official; he has received no notice, no hearing, no neutral decisionmaker, and no opportunity to confront accusers. The conduct includes a threat of arrest by sworn law-enforcement officers for performing the duties his statutory office requires; physical confinement of an elected officer within a single room by city police on city premises; an extrajudicial gag order imposed on a sitting officeholder regarding a matter of significant public concern; suppression of his lawful agenda submissions routed through a political adversary; and a contemporaneous *ultra vires* motion to remove him from office outright by majority vote of the Council. The conduct "extend[s] beyond mere violations of state law, even violations resulting from bad faith[,] to something more egregious and more extreme." *Castille*, 168 F.4th at 254.

99. ***De Facto* Removal Without Process.** Defendants have accomplished a *de facto* removal of Plaintiff from the Office of Mayor without invoking any lawful removal proceeding. Texas law provides an exclusive mechanism for removing an elected municipal officer — quo warranto proceedings. *State ex rel. Angelini v. Hardberger*, 932 S.W.2d 489, 490 (Tex. 1996); Tex. Civ. Prac. & Rem. Code § 66.002. That mechanism has not been invoked and could not be

successfully invoked on the facts presented. Defendants have instead used void ordinances, physical lockouts, arrest threats, a communication ban, an unauthorized investigation with an extrajudicial gag order, agenda suppression administered through a political adversary, and — at the April 27 meeting — an *ultra vires* motion to remove the Mayor outright, to achieve through raw power what they cannot accomplish through law or democracy.

100. **Functional Nullification of Elected Office.** Plaintiff retains his title as Mayor-CEO. He has been stripped of every functional attribute of that office: he cannot enter City Hall on ordinary working days; he cannot communicate with city employees; he cannot attend EDC meetings; he cannot retrieve his mail; his document-signing authority has been usurped; his ability to place items before the body over which he presides has been suppressed; he is forbidden from speaking publicly about the very investigation that the Council majority initiated against him; and the systematic flow of information about official municipal events has been cut off to him. An elected official who can be arrested for attending a city meeting—because a void ordinance has made him a trespasser—has been removed from office in every sense that matters.

101. **Damages.** Plaintiff is entitled to compensatory and nominal damages, injunctive and declaratory relief, punitive damages against individual Defendants in their personal capacities, and attorney's fees pursuant to 42 U.S.C. § 1988.

### COUNT V: SUPPLEMENTAL STATE LAW — TEXAS OPEN MEETINGS ACT
### (Against All Defendants in Official Capacities)

102. Plaintiff incorporates all preceding paragraphs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

103. **TOMA Requirements.** The Texas Open Meetings Act requires all meetings of governmental bodies to be held pursuant to advance public notice that describes, with sufficient

specificity, the subject matter to be discussed or acted upon. Any action taken in violation of TOMA is voidable. Tex. Gov't Code §§ 551.002, 551.041, 551.043, 551.102, 551.141.

104. **March 9, 2026 TOMA Violations.** The posted agenda for the March 9, 2026 Special Called Meeting did not identify any ordinance or resolution restricting the Mayor's powers, any legislative action concerning mayoral authority, or the Mayor by name as the subject of any charge. The closed session was cited in part to Texas Government Code § 551.072(2)—a real property provision—as partial authority for deliberations having nothing to do with real property. Defendant Jimmy Hernandez's own admissions at the March 23 meeting confirmed that direction was given in the March 9 Closed Session to select an investigative firm and regarding the substance of the legislative measure subsequently enacted—matters not properly noticed.

105. **The March 23, 2026 Meeting Did Not Cure the March 9 Defects.** Defendants have argued, and the R&R accepted, that the March 23, 2026 regular meeting "ratified" the March 9 action and mooted any TOMA defect under *City of Combine v. Robinson*, No. 05-10-01384-CV, 2011 WL 3570510 (Tex. App.—Dallas Aug. 16, 2011, no pet.). The Dallas Court of Appeals— the same court that decided *Robinson*—subsequently limited that holding in *City of Plano v. Hatch*, 584 S.W.3d 891, 901–02 (Tex. App.—Dallas 2019, no pet.). The *Hatch* court distinguished *Robinson* and held that a subsequent ratification does not moot a TOMA challenge where the plaintiff pleads that the ratification itself was the product of, or tainted by, TOMA violations. *Id.* at 902. Plaintiff has pleaded precisely that. By Defendant Jimmy Hernandez's own admissions on the record at March 23, direction was given in the March 9 closed session about both the substance of the ratifying ordinance to be enacted and the selection of the investigative firm—matters not properly noticed in the March 23 agenda. The March 23 ratification was itself the product of the March 9 closed-session deliberations that the TOMA challenge targets. *Hatch*, not *Robinson*,

controls. Separately, the underlying substantive defects in the March 9 action—enactment of a void ordinance *ultra vires* under §§ 22.042, 22.072, and 51.012—cannot be cured by ratification in any event. A void act cannot be ratified.

106.    **April 27, 2026 TOMA Violations.** The executive-session notice for the April 27, 2026 Regular Meeting was likewise defective. The cited consultation-with-attorney authority did not properly notice deliberations on the substantive findings or scope of the Lloyd Gosselink investigation. Defendant Trevino—a named Defendant in this federal litigation as of April 8— nonetheless participated in the closed-session discussions in disregard of her direct adversarial interest. Defendant Sellars' second motion to remove the Mayor from office, made at the April 27 meeting, was not properly noticed under any TOMA authority.

107.    **Declaratory Relief Sought.** Pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.001– 011, Plaintiff seeks declarations that: (a) Ordinance No. 2026-09 is void *ab initio* under Tex. Loc. Gov't Code § 51.012 and voidable under TOMA; (b) Ordinance No. 2026-11 is void *ab initio*; (c) the March 9, 2026 legislative action is voidable for TOMA violations; (d) the City has not lawfully authorized the retention of Lloyd Gosselink Rochelle & Townsend, P.C.; (e) the April 22, 2026 confidentiality directive is void and of no effect; and (f) the April 27, 2026 closed-session deliberations on the Lloyd Gosselink investigation and the Sellars removal motion are voidable for TOMA violations.

108.    Plaintiff is entitled to attorney's fees as the prevailing party under Tex. Civ. Prac. & Rem. Code § 37.009.

## COUNT VI: SUPPLEMENTAL STATE LAW — ULTRA VIRES / TEXAS DUE COURSE OF LAW
### (Against Individual Defendants in Their Official Capacities)

109. Plaintiff incorporates all preceding paragraphs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

110. **Ultra Vires Doctrine.** When a state official acts without legal authority, the official's action is not protected by governmental immunity and prospective injunctive relief is available. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009).

111. **Individual Ultra Vires Conduct.** (a) Defendants Burton, Jimmy Hernandez, and Sellars acted without legal authority in enacting Ordinance Nos. 2026-09 and 2026-11; (b) Defendant Sellars acted without legal authority in moving on April 27, 2026 to remove the elected Mayor from office; (c) Defendant Burton acted without legal authority in signing Resolution No. 2026-08R and other official City documents in the Mayor's stead, and in routing the disposition of the Mayor's agenda submissions through himself; (d) Defendant Trevino acted without legal authority in drafting Ordinance No. 2026-11 citing § 22.072 when that provision's applicable subsection — (a) — authorizes only the addition of duties to officers whose duties are specified by the Code, in continuing to direct enforcement after receiving explicit written notice on March 14, 2026 that the ordinances were void *ab initio*, and in continuing to advise the Council majority on matters adverse to Plaintiff after becoming a named Defendant; and (e) Defendant Maria Hernandez acted without legal authority in enforcing a physical lockout not authorized by the void ordinance, directing law enforcement to expel Plaintiff from his March 12 WOTA meeting, directing the communication ban, unilaterally retaining outside counsel to investigate Plaintiff without Council authorization, and suppressing the Mayor's lawful agenda submissions.

112.     **Texas Due Course of Law.** Article I, Section 19 of the Texas Constitution prohibits the deprivation of a citizen's privileges or immunities without due course of law. The objective inconsistency—applying these extraordinary measures to an elected Mayor performing mandatory statutory duties while no comparable measures were applied to the Council majority for its own alleged violations—demonstrates the arbitrariness abhorrent to due course of law.

113.     **Relief.** Plaintiff is entitled to prospective injunctive relief against each individual Defendant in their official capacity, including: restoration of full access to City Hall; restoration of direct communication rights; restoration of document-signing authority; restoration of the Mayor's right to place items on the Council agenda directly; nullification of the April 22, 2026 confidentiality directive; and an injunction prohibiting enforcement of Ordinance Nos. 2026-09 and 2026-11. To the extent the declaratory relief sought in Count V is granted, Plaintiff is also entitled to attorney's fees as the prevailing party under Tex. Civ. Prac. & Rem. Code § 37.009. *City of San Antonio v. Int'l Ass'n of Firefighters, Local 624*, 582 S.W.3d 455, 467 (Tex. App.—San Antonio 2018, no pet.).

## VI.     DAMAGES

114.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: (a) reputational harm from the public nature of the retaliatory conduct; (b) emotional distress, mental anguish, humiliation, and dignitary harm; (c) ongoing chilling and suppression of his constitutional rights; and (d) all other actual damages proven at trial.

115.     Plaintiff is entitled to nominal damages for each constitutional violation.

116.     Plaintiff is entitled to punitive damages against individual Defendants in their personal capacities.

## VII.   CONDITIONS PRECEDENT

117.   All conditions precedent have been performed, have occurred, or have been waived. Plaintiff made formal written demands through prior counsel on March 10, March 14, and March 24, 2026. Plaintiff has, through counsel and personally, demanded production of the City Council action authorizing the Lloyd Gosselink retention and the lifting of the confidentiality directive, including most recently on May 26, 2026; those demands have not been honored.

## IX.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Johnny A. Rodriguez, Jr. respectfully prays that this Court:

A.   Issue a preliminary and permanent injunction restoring Plaintiff's full access to City Hall and all municipal facilities; restoring his right to communicate directly with city employees, the City Attorney, and city consultants; restoring his document-signing authority as chief executive officer; restoring his ability to place items on the Council agenda directly; nullifying the April 22, 2026 confidentiality directive; and restraining Defendants from enforcing Ordinance Nos. 2026-09 and 2026-11 or taking any action pursuant to their purported authority;

B.   Enter a declaratory judgment that Ordinance Nos. 2026-09 and 2026-11 are void *ab initio*, that the physical lockout is unlawful and unauthorized, that the City has not lawfully authorized the retention of Lloyd Gosselink Rochelle & Townsend, P.C., that the April 22, 2026 confidentiality directive is void and of no effect, and that Plaintiff retains the full statutory authority of the Mayor-CEO of the City of Balcones Heights;

C.   Award Plaintiff compensatory damages against Defendants for reputational harm, emotional distress, mental anguish, humiliation, and all other actual damages proven at trial;

D.     Award Plaintiff punitive damages against the individual Defendants in their personal

       capacities;

E.     Award Plaintiff nominal damages for each constitutional violation;

F.     Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 on

       his federal claims (Counts I–IV), and pursuant to Tex. Civ. Prac. & Rem. Code § 37.009

       on the declaratory relief granted on Count V;

G.     Award pre-judgment and post-judgment interest as allowed by law; and

H.     Grant such other and further relief as this Court deems just and proper.

Respectfully Submitted,

**GRABLE PLLC**

*/s/Brandon J. Grable*
**Brandon J. Grable**
State     Bar     No.     24086983
brandon@grable.law
12451 Starcrest Drive, Ste 206
Telephone: 210-963-5297
Facsimile: 210-215-4765
***Attorney for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on the 28th day of May, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Brandon J. Grable*
**Brandon J. Grable**