| | |
|---|---|
| **JOHNNY A. RODRIGUEZ, JR.,** <br> *Plaintiff,* <br><br> v. <br><br> **CITY OF BALCONES HEIGHTS, TEXAS, et al.,** <br> *Defendants,* | **CIVIL ACTION NO.** <br><br> **5-26-CV-02327-OLG-ESC** |

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE ORLANDO L. GARCIA:**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), Plaintiff Johnny A. Rodriguez, Jr., the duly elected Mayor-CEO of the City of Balcones Heights, respectfully objects to the Report and Recommendation ("R&R") signed by Magistrate Judge Elizabeth S. Chestney on May 13, 2026, but entered on May 14, 2026, [**ECF 25**] recommending denial of Plaintiff's Emergency Motion for Preliminary Injunction. Plaintiff requests that this Court review the objected-to portions *de novo*, reject the recommendation, and grant the requested preliminary injunctive relief. In the alternative, Plaintiff requests that the matter be returned to the Magistrate Judge with instructions to apply the corrected legal framework set forth below.

# INTRODUCTION

This case is about whether the Mayor of a Type A general law municipality can be locked out of City Hall, barred from communicating with city staff, stripped of his statutory authority, threatened with arrest by sworn officers for attending a developer meeting, and subjected to an indefinite "investigation" under an extrajudicial gag order—all because he exercised the very oversight duties the Texas Legislature commanded him to perform. The R&R recommends denying preliminary relief on six principal grounds, each of which requires correction on *de novo* review.

**First**, the R&R's statutory-construction holding (**R&R at 18–19**) reads Texas Local Government Code § 22.072(a) out of the statute. Section 22.072(a)—which the R&R does not cite—authorizes the governing body to require a municipal officer "*whose duties are prescribed by this code*" to perform *additional* duties. The Mayor falls under (a), not (b). The Council's power vis-à-vis an officer whose duties *are* specified is to *add* duties, not *subtract* them. The R&R's implied-powers reading is foreclosed by Texas Local Government Code § 51.012, which provides that a Type A general law municipality may adopt only ordinances "*not inconsistent with state law*," and which the R&R does not cite or apply.

**Second**, the R&R's "temporary" finding (**R&R at 16**) rests on a representation by defense counsel that the investigation "is expected to be completed within a few weeks," understood as 30 days of the May 1 preliminary-injunction hearing. That representation has been falsified by the passage of time. As of the filing of these Objections—26 days post-hearing and well past the represented completion window—the investigation has not begun in any substantive sense. The investigator (Lloyd Gosselink Rochelle & Townsend, P.C.) has refused to coordinate with Plaintiff through normal channels, refused Plaintiff's requests for documentation of its retention authority,

and as of the date of these Objections has not interviewed Plaintiff. The factual predicate for the "temporary" finding has dissolved. The narrow-tailoring analysis collapses with it.

**Third**, the R&R's distinction of *Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 U.S. Dist. LEXIS 43145 (W.D. Tex. Mar. 27, 2013), addresses only the physical-access theory and fails to engage Plaintiff's independent communication-ban theory. The communication ban is itself a complete prior restraint: the Mayor cannot communicate directly with any City employee, consultant, or the City Attorney by any means without express written Council consent. Routing through Mayor Pro Tem Burton is not an alternative channel; it is a third-party intermediary controlled by one of the Council members who voted to silence the Mayor and against whom Plaintiff's pending agenda items are directed.

**Fourth**, the R&R's retaliation analysis (**R&R at 11–13**) applies *Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002), without engaging the controlling Supreme Court framework for First Amendment claims by elected officials against retaliatory action by their colleagues, *Houston Community College System v. Wilson*, 595 U.S. 468 (2022). *Wilson* calibrates the "ordinary firmness" inquiry to the elected-official context, and on that calibrated standard the adverse actions here—lockout, arrest threat, communication ban, document-signing usurpation, indefinite gag order, agenda suppression—are categorically more severe than the purely verbal censure *Wilson* held was non-actionable.

**Fifth**, the R&R imports the "but-for cause" standard from *Nieves v. Bartlett*, 587 U.S. 391 (2019)—a retaliatory-arrest probable-cause case—into a *Mt. Healthy* causation analysis at the preliminary-injunction stage. **R&R at 12–13**. The governing standard at the PI stage is whether protected activity was a *substantial or motivating factor* in the adverse action, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Haverda v. Hays Cnty.*, 723 F.3d 586,

591–92 (5th Cir. 2013)—not whether it was the *but-for cause*. The R&R's application of the wrong causation standard requires correction on *de novo* review.

**Sixth**, the R&R's state-law analysis (**R&R at 17–18**) treats Plaintiff's TOMA claim as moot under *City of Combine v. Robinson*, 2011 WL 3570510 (Tex. App.—Dallas Aug. 16, 2011, no pet.). But the same Dallas Court of Appeals subsequently limited *Robinson* in *City of Plano v. Hatch*, 584 S.W.3d 891, 901–02 (Tex. App.—Dallas 2019, no pet.), holding that ratification does not moot a TOMA challenge where the ratification itself is the product of TOMA violations— precisely what Plaintiff has pleaded here.

## STANDARD OF REVIEW

When a party files specific written objections to a magistrate judge's recommendation on a dispositive matter, the district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). The district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). *De novo* review of legal conclusions is independent and plenary; the magistrate's reasoning is afforded no deference. *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

## OBJECTIONS

## OBJECTION 1: The R&R's Statutory-Construction Holding Skips the Controlling Subsection of § 22.072, Disregards § 51.012's Consistency Requirement, and Conflates the Power to *Prescribe* Additional Duties with a Nonexistent Power to *Proscribe* Mandatory Ones.

Plaintiff objects to the R&R's conclusion (**R&R at 18–19**) that the City Council possessed implied statutory authority to enact ordinances limiting the Mayor's core mayoral duties, and to the R&R's rejection of Plaintiff's argument under §§ 22.072 and 51.012 as "novel." The R&R's

analysis is foreclosed by two independent provisions of the Texas Local Government Code that the R&R does not engage: § 22.072(a) and § 51.012.

**A. Section 22.072(a)—Which the R&R Does Not Cite—Directly Answers the Question and Forecloses the R&R's Reading.**

The R&R quotes § 22.042(a) and § 22.072(b) but does not cite § 22.072(a). The omitted subsection is the operative one. It provides:

> **The governing body of the municipality may require a municipal officer whose duties are prescribed by this code to perform *additional duties*.**

Tex. Loc. Gov't Code § 22.072(a) (emphasis added). Section 22.072(b)—the only subsection the R&R cites—governs the opposite situation: officers "whose duties are not specified by this code." *Id.* § 22.072(b). The two subsections divide the universe of municipal officers into two mutually exclusive categories and assign the Council a different power as to each.

The Mayor of a Type A general law municipality falls under (a), not (b). His duties *are* prescribed by the code—they are set forth in § 22.042. The Council's statutory power vis-à-vis the Mayor is therefore the (a) power: to require him to perform *additional* duties beyond those the Legislature has already imposed. The Council has no statutory power to *subtract* duties § 22.042 has imposed, because that power is nowhere in the Code.

The R&R's reading collapses the distinction between (a) and (b). It treats the (b) power—prescribing duties of officers whose duties are not specified—as if it were the (a) power, and reads the (a) power as if it included the inverse of what subsection (a) actually authorizes. That reading cannot be reconciled with the Texas Supreme Court's repeated holdings that statutory construction must give effect to every word the Legislature has enacted. *Spradlin v. Jim Walter Homes, Inc.*,

34 S.W.3d 578, 580 (Tex. 2000); *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000).

**B. The Correct Reading of *Bizios* and Section 51.012—The Type A Consistency Provision—Forecloses the R&R's Implied-Powers Reading.**

The R&R reasons that because Type A general law cities possess "such implied powers as are reasonably necessary to make effective powers expressly granted"—citing § 51.001 and *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 535 (Tex. 2016)—the Council enjoys implied authority to limit the Mayor's powers. **R&R at 18–19**. First, this misreads *Bizios* (and the parties' positions). Second, that reasoning does not survive § 51.012, which the R&R does not cite or apply.

**First**, *Bizios* held that a Type A general-law municipality lacks authority to enforce its building codes within its extraterritorial jurisdiction—a decision unanimously **denying** asserted municipal power. *Bizios*, 493 S.W.3d at 535. The Texas Supreme Court's "implied powers" formulation in *Bizios* is a **strict-construction limitation** on municipal authority, not a generative source of it. The same passage the R&R quotes makes the limitation explicit: implied powers extend only to those "reasonably necessary"—meaning "**indispensable**"—to make effective an expressly granted power, and "**[a]ny fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the [municipality], and the power is denied.**" *Id.* (quoting *Foster v. City of Waco*, 255 S.W. 1104, 1106 (Tex. 1923)).

Applied properly, *Bizios* defeats the R&R's reasoning rather than supporting it. The R&R does not identify any expressly granted Council power that would be "rendered nugatory" without the implied authority to subtract the Mayor's § 22.042 duties. The Council retains its express power

under § 22.072(a) to prescribe additional duties for an officer whose duties are specified by the Code; that express power requires no implied supplement to be fully effective.

Importantly, Section 51.012, the Type A consistency provision in effect since the original 1987 enactment of the Code, provides:

**The municipality may adopt an ordinance, act, law, or regulation, not inconsistent with state law, that is necessary for the government, interest, welfare, or good order of the municipality as a body politic.**

Tex. Loc. Gov't Code § 51.012 (Acts 1987, 70th Leg., ch. 149, § 1, eff. Sept. 1, 1987). Section 51.012 is the express consistency cap on Type A municipal authority and applies *regardless* of whether the asserted power is express or implied. An ordinance that forbids the Mayor from *performing* a duty that § 22.042(b) commands him to perform is, by definition, *inconsistent* with state law. Section 51.012 voids the contradiction. The Texas Legislature reinforced this longstanding consistency requirement in 2023, but § 51.012 is itself sufficient to defeat the implied-powers reading.[1] At a minimum, § 51.012's consistency cap creates, at the very least, "fair, reasonable, substantial doubt" about the asserted implied power; under *Bizios*, doubt must be resolved "against the [municipality]." 493 S.W.3d at 535.

### C. The Ordinances Proscribe Rather Than Prescribe—a Distinction the Statutory Text Does Not Tolerate.

Section (B) of Exhibit A to Ordinance No. 2026-09 expressly is titled "*Express limitations on the powers of the Mayor.*" The ordinance does not impose new duties; it imposes restrictions

---

[1] In 2023 the Texas Legislature added § 51.002 ("Notwithstanding Section 51.001, the governing body of a municipality may adopt, enforce, or maintain an ordinance or rule only if the ordinance or rule is consistent with the laws of this state."). Tex. Loc. Gov't Code § 51.002 (added by Acts 2023, 88th Leg., R.S., Ch. 899). To the extent this Court considers § 51.002, it reinforces the longstanding § 51.012 consistency requirement on which Plaintiff principally relies.

on existing ones. It prohibits the Mayor from communicating directly with subordinate officers—the very officers § 22.042(b) requires him to inspect. It *bars* him from City Hall except during narrow monthly windows—making physical inspection of municipal operations impossible. It *prohibits* him from taking adverse action against subordinate officers without Council consent—directly contradicting the Mayor's statutory command to "cause any negligence, carelessness, or other violation of duty to be prosecuted and punished." Tex. Loc. Gov't Code § 22.042(b).

The Texas Local Government Code uses "prescribe" in only one direction. Section 22.072(a) prescribes *additional* duties; § 22.072(b) prescribes *initial* duties for officers without specified duties. Nowhere does the Code use "prescribe" as authority to *subtract*. The R&R's contrary reading reverses the polarity of the statutory text and reads into § 22.042(a)'s closing clause an implied power that § 51.012 expressly forecloses.

### D. The R&R's "Novel" Label Does Not Resolve the Statutory Question on *De Novo* Review.

The R&R's characterization of Plaintiff's reading as "novel" (**R&R at 19**) does not foreclose it. A statutory-construction question reviewed *de novo* by a district court on a complete record—where the Magistrate Judge's analysis skipped the controlling statutory subsection and the controlling post-*Bizios* statute—is precisely the posture in which text-grounded analysis can and should produce the correct answer. The "novelty" is not in Plaintiff's reading; it is in the R&R's implied-powers route, which no Texas court has endorsed and which § 51.012 forecloses on its face.

This Court has the canons and the text. Both compel the conclusion that the challenged ordinances are *ultra vires* on their face under Texas law.

## OBJECTION 2: The R&R's "Temporary" Finding Rests on a Representation by Defense Counsel That Has Been Falsified by the Passage of Time, and Cannot Sustain the Narrow-Tailoring Analysis.

Plaintiff objects to the R&R's repeated characterization of the challenged restrictions as "temporary" and "narrowly tailored." **R&R at 14–16**. The factual predicate for that characterization has dissolved.

### A. The "Few Weeks" Representation Has Been Falsified by the Passage of Time.

The R&R found that the restrictions on the Mayor are "temporary—only enduring for the length of the investigation, which is expected to be completed within a few weeks." **R&R at 16**. Elsewhere the R&R quotes defense counsel's representation that "the investigation is expected to be completed within 30 days of the preliminary-injunction hearing." **R&R at 10**. The preliminary-injunction hearing was held on May 1, 2026. Thirty days from May 1 is May 31. As of the date of these Objections, 28 days have elapsed post-hearing.

The investigation has not been completed. The investigation has not, in any substantive sense, begun. The Mayor first received contact from Lloyd Gosselink Rochelle & Townsend, P.C.—the investigator unilaterally selected by Defendant Maria Hernandez without Council resolution—on April 22, 2026, requesting an interview and imposing an extrajudicial confidentiality directive on Plaintiff. Plaintiff, through counsel, requested documentation of the firm's retention authority and basic procedural information; the investigator refused to coordinate through normal channels and continued to insist on the interview without disclosing the scope or authority of the inquiry. Exchanges continued through May 14, 2026. On May 26, 2026, Plaintiff issued a formal demand for the Council resolution authorizing Lloyd Gosselink's retention, certified minutes, the engagement letter, and identification of who within the City directed the retention. As of the filing of these Objections, that demand has not been honored. *Cf. Bradshaw v.*

*Salvaggio*, No. SA-20-CV-01168-FB, 2020 WL 8673836 (W.D. Tex. Oct. 28, 2020) (rejecting indefinite investigatory pretext as basis to deny prospective injunctive relief).

Plaintiff respectfully requests leave to submit a short supplemental declaration documenting the post-hearing developments described above. Fed. R. Civ. P. 72(b)(3) authorizes the district judge to "receive further evidence" on *de novo* review. The supplemental evidence is directly responsive to the R&R's factual finding and bears squarely on the "temporary" question. If the Court declines to receive the supplemental evidence, Plaintiff respectfully submits that the issue is preserved for the record.

**B.  The Ordinance's Own Text Provides That the Restrictions Are Indefinite.**

Independent of the falsified representation, the operative ordinance is indefinite by its own terms. Section 3 of Ordinance No. 2026-11 provides:

> **The restrictions in Exhibit B shall remain in effect during the third-party investigation into the complaints and allegations against the Mayor is completed [sic] *or further order of the City Council, whichever occurs last*.**

Ordinance No. 2026-11, § 4 (emphasis added). The phrase "whichever occurs last" is dispositive. The restrictions do not terminate when the investigation ends. They terminate only upon an affirmative vote of the City Council majority—the same majority that twice voted to impose them, that voted at the March 23, 2026 meeting to ratify and expand them, that has appeared in this Court defending them, and that as of April 27, 2026 attempted unsuccessfully to remove the Mayor from office outright. There has been no commitment in this litigation, and no commitment in the ordinance itself, that the restrictions will lift even when the investigation concludes.

### C. Voluntary-Cessation Doctrine Reinforces the Indefiniteness Conclusion.

Even were Defendants to lift the restrictions in response to litigation pressure, the burden of demonstrating that the conduct will not recur falls on Defendants and is "heavy." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Where the Council majority has shown—by enacting, ratifying, defending, and supplementing the restrictions, and by attempting to remove the Mayor outright—its commitment to maintaining the regime, the voluntary-cessation standard cannot be met on this record. The narrow-tailoring analysis collapses, and the prior-restraint analysis discussed in Objection 3 takes on its full constitutional weight.

## OBJECTION 3: The R&R's Distinction of *Cuellar v. Bernard* Addresses Only the Physical-Exclusion Theory and Does Not Engage the Independent Communication-Ban Theory.

Plaintiff objects to the R&R's distinction of *Cuellar v. Bernard*, 2013 U.S. Dist. LEXIS 43145, on the ground that the distinction reaches only the physical-exclusion theory while leaving Plaintiff's independent communication-ban theory unaddressed. **R&R at 15–16**.

The R&R reasons that *Cuellar* involved a "total ban on entry to City Hall," while here the Mayor retains access to public areas and council chambers and is therefore not subject to a complete ban. **R&R at 15**. That distinction reads *Cuellar* as turning on a numerical "complete ban" test. It does not. *Cuellar* turned on the absence of procedural safeguards and on the prior-restraint character of the restrictions—not on whether the bar was 100 percent or 95 percent. And the distinction reaches only the physical-exclusion theory while leaving Plaintiff's independent communication-ban theory unaddressed.

Ordinance No. 2026-09 prohibits the Mayor from communicating directly with any City employee, consultant, or the City Attorney by any means—in person, by phone, by email, by text, by any channel—without express written City Council consent. The purported "alternative" of

routing communications through Mayor Pro Tem Burton is not an alternative channel of speech. It is a third-party intermediary controlled by a political adversary who voted to impose the very restriction at issue, who simultaneously signed City documents in the Mayor's stead, and who as of May 7–13, 2026 served as the gate-keeper through whom the Mayor's lawful agenda submissions—including a constituent complaint about Defendant Burton's own conduct—were routed for suppression.

A licensing scheme conditioning expression on advance government permission is constitutional only if it operates under procedural safeguards designed to prevent censorship. *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). The Council's written-consent requirement contains no procedural safeguards. There is no defined criteria, no neutral decisionmaker, no time limit on Council consideration, no presumption of approval, no review mechanism, and no judicial check. It is a pure veto power exercised by the political adversaries the speech is most likely to be directed at.

The R&R does not engage this analysis. It does not analyze the Council's written-consent requirement under *Collins v. Ainsworth* or any other prior-restraint authority. It treats the existence of the Mayor Pro Tem routing as if it were an alternative channel of speech, when, in constitutional terms, it is the opposite—a textbook prior restraint without procedural safeguards.

Plaintiff also presses two further independent prior-restraint theories the R&R does not engage: the April 22, 2026 extrajudicial confidentiality directive imposed on the Mayor by the investigator, and the May 11, 2026 suppression of twelve agenda items the Mayor sought to place on the May 18 Council agenda. Each is content-based, each operates without procedural safeguards, and each is independently a prior restraint under *Near v. Minnesota*, 283 U.S. 697, 713 (1931).

**OBJECTION 4: The R&R Applies the *Keenan* Citizen-Arrest Chilling-Effect Standard Without Engaging the Controlling Supreme Court Framework in *Houston Community College System v. Wilson*.**

Plaintiff objects to the R&R's First Amendment retaliation analysis (**R&R at 11–13**) on the ground that it applies *Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002), without engaging—or even citing—*Houston Community College System v. Wilson*, 595 U.S. 468 (2022), the controlling Supreme Court decision on First Amendment retaliation claims by elected officials against retaliatory action by their colleagues.

Plaintiff does not contest that the *Keenan* "ordinary firmness" standard governs the chilling-effect inquiry in retaliation cases generally. *Wilson* does not displace that standard—it calibrates it. The Supreme Court in *Wilson* was emphatic that the First Amendment "surely promises an elected representative . . . the right to speak freely on questions of government policy," 595 U.S. at 478, and recognized that elected officials operate in a distinct constitutional posture from private citizens. The chilling-effect inquiry must therefore be calibrated to that posture: would a reasonable elected official, acting in furtherance of his statutory and constituent-representation duties, be deterred from the protected activity by the challenged adverse action?

The R&R does not perform that calibration. It applies *Keenan* as if Plaintiff were a private citizen complaining of retaliatory law enforcement—the factual setting in which *Keenan* was decided. **R&R at 11–12**. On the calibrated *Wilson* inquiry, the adverse actions here are categorically more severe than the purely verbal censure *Wilson* held was not actionable, 595 U.S. at 474–80: lockout from City Hall on every ordinary working day; arrest threat by sworn officers during a developer meeting; communication ban barring contact with the staff the Mayor must oversee; usurpation of document-signing authority; extrajudicial confidentiality directive on a matter of public concern; suppression of lawful agenda submissions routed through a political

adversary; and an *ultra vires* April 27, 2026 motion to remove the Mayor outright. Each would deter any reasonable elected official; the cumulative effect is constitutionally devastating and is documented in the record.

Further controlling authority the R&R does not engage includes *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966) (elected officials enjoy First Amendment protection against retaliation by their colleagues); *Jenevein v. Willing*, 493 F.3d 551, 558 (5th Cir. 2007) (the *Pickering-Garcetti* framework does not govern elected officials' speech); and *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (government officials cannot escape First Amendment scrutiny for retaliatory action against political speech). *De novo* review requires application of the controlling Supreme Court framework. Properly applied, the framework compels a finding of substantial likelihood of success on the retaliation element.

## OBJECTION 5: The R&R Imports the *Nieves* "But-For" Standard from Retaliatory-Arrest Doctrine into *Mt. Healthy* Retaliation Analysis at the Preliminary-Injunction Stage — and Applies It to Resolve Disputed Factual Questions Against Plaintiff.

Plaintiff objects to the R&R's causation analysis (**R&R at 11–13**). The R&R commits two independent errors: it misallocates the *Mt. Healthy* burden at the preliminary-injunction stage, and it imports the wrong causation standard. Either error standing alone requires correction on *de novo* review; together, they require reversal of the R&R's recommendation on retaliation.

### A. The R&R Misallocates the *Mt. Healthy* Burden at the Preliminary-Injunction Stage.

Under *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), a First Amendment retaliation plaintiff bears only the initial burden of showing that protected conduct was a substantial or motivating factor in the adverse action. *Id.* at 287. The burden then shifts to

the defendant to demonstrate "by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Id.* The Fifth Circuit applies the framework strictly. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591–92 (5th Cir. 2013); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001).

The R&R credits the defense narrative of two staff resignations and seventeen workplace complaints as a sufficient non-retaliatory explanation for the timing of the March 9 ordinance. **R&R at 12–13**. That is the *Mt. Healthy* defense—the defendant's affirmative burden to prove same-decision causation by a preponderance of the evidence at a merits stage. It is not a permissible basis for resolving the causation element against Plaintiff at the preliminary-injunction stage, where Plaintiff need show **only** that protected activity was a *substantial factor*—not that it was the *only* factor. The R&R credits the defense narrative as if it were established, when at most it created a fact issue for trial.

## B. The R&R Imports the *Nieves* "But-For" Standard from Retaliatory-Arrest Doctrine into *Mt. Healthy* Analysis.

Compounding the burden-allocation error, the R&R applies the wrong causation standard. The R&R reasons that Plaintiff has "failed to show a substantial likelihood that his communication with Chief Cavazos about missing police equipment (or any other identified protected activity) was the *but-for reason* for the City Council action." **R&R at 13** (emphasis added). The R&R imports that "but-for" formulation from *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019), cited at **R&R page 12**. *Nieves* is a retaliatory-arrest case addressing the role of probable cause in defeating First Amendment retaliation claims premised on arrest. It is not the framework for retaliation against an elected official premised on legislative action by other elected officials. *Mt. Healthy* requires only "substantial or motivating factor"—not "but-for cause."

### C. Plaintiff Has Met the Substantial-Factor Standard Several Times Over.

*Timing*. Six days separate Plaintiff's March 3, 2026 face-to-face confrontation with Police Chief Cavazos about the missing $12,000 in police equipment from the March 9, 2026 special meeting at which the Council enacted Ordinance No. 2026-09. Five days separate Plaintiff's March 4, 2026 formal written oversight directive from the same meeting. "Very close temporal proximity can independently establish causation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

*Coordination on March 2, 2026*. The same day City Administrator Maria Hernandez issued the directive purporting to insulate Chief Cavazos from mayoral oversight—March 2, 2026—was the same day Resolution No. 2026-08R now acknowledges the City Administrator was first "made aware" of the complaints against the Mayor. The simultaneous emergence of the Cavazos-insulation directive and the first-known complaints, on March 2, 2026, is direct evidence of coordination.

*Direct evidence in the words of a Defendant*. At the March 23, 2026 meeting where the Council passed Ordinance No. 2026-11, the Council also voted to fast-track and waive the probationary periods on employment contracts for Police Chief Cavazos, City Administrator Hernandez, and City Secretary Bravo. Councilmember Jimmy Hernandez stated on the record, in open session, that the express purpose of fast-tracking these contracts was to protect those employees from the Mayor—to ensure that any future termination would require a Council majority vote rather than being "left to one individual." That is direct evidence of retaliatory motive in the words of one of the Defendants, on the record, in open session.

*Post-filing acts confirm the theory*. Post-filing conduct further confirms causation: (i) Defendant Sellars' April 27 motion to remove Plaintiff (an *ultra vires* act); (ii) the Lloyd

Gosselink retention without Council authorization and the April 22 extrajudicial confidentiality directive; (iii) the May 7–13 agenda suppression, with Defendant Burton serving as gate-keeper—including suppression of a constituent complaint directed at Defendant Burton himself; and (iv) the May 18 meeting cancellation in circumstances inconsistent with Defendant Burton's asserted absence. These post-filing acts demonstrate that retaliation has continued well past any window during which the workplace-complaints narrative could plausibly have explained Defendants' conduct.

*The 21-Month Gap Cuts in Plaintiff's Favor*. The R&R relies on the absence of Council action on earlier complaints to suggest the timing breaks the causal chain. **R&R at 13**. But the question under *Mt. Healthy* is whether the protected conduct *immediately preceding* the adverse action was a substantial factor—here, the March 3 confrontation and March 4 directive, six days and five days before the retaliatory ordinance. The 21-month gap establishes that no formal Council action against the Mayor occurred at any point before the protected activity—a textbook *Mt. Healthy* "substantial factor" posture. The defense narrative of "two resignations" and "17 complaints" is, in any event, contested on its own terms: the complainants are the same subordinate employees whose contracts were fast-tracked at the very meeting that stripped the Mayor's authority, by a Defendant who admitted on the record that the contract fast-track was designed to protect those employees from mayoral oversight. The defense narrative is not a clean alternative explanation; it is the same retaliatory scheme reframed.

## OBJECTION 6: The R&R's Treatment of the TOMA Claim as Moot Under *City of Combine* Conflicts with the Same Court's Later Limiting Decision in *City of Plano v. Hatch* and Disregards That the March 23 Meeting Itself Was Infected with TOMA Defects.

Plaintiff objects to the R&R's conclusion (**R&R at 17–18**) that any TOMA violation relating to the March 9 meeting was "mooted" by the March 23 meeting under *City of Combine v.*

*Robinson*, No. 05-10-01384-CV, 2011 WL 3570510 (Tex. App.—Dallas Aug. 16, 2011, no pet.). The ratification rationale cannot bear that weight where the ratifying meeting was itself defective under TOMA.

The Dallas Court of Appeals—the same court that decided *Robinson*—subsequently limited that holding in *City of Plano v. Hatch*, 584 S.W.3d 891, 901–02 (Tex. App.—Dallas 2019, no pet.). *Hatch* distinguished *Robinson* and held that subsequent ratification does not moot a TOMA challenge where the plaintiff pleads that the ratification itself was the product of, or tainted by, TOMA violations. *Id.* at 902 ("the Hatches pleaded that the City's subsequent ratification was the result of the City's TOMA violations"). Plaintiff has pleaded precisely that. The March 23 ratification was not an independent open-session deliberation that cured the March 9 defects; it was the legislative product of the same closed-session direction-giving that the TOMA challenge targets. *Hatch*, not *Robinson*, controls.

Councilmember Jimmy Hernandez admitted on the record at the March 23, 2026 meeting that direction was given in the March 9, 2026 closed session regarding the substance of the legislative measure subsequently enacted and the selection of the investigative firm—matters not properly noticed in the March 9 agenda and not properly noticed for ratification in the March 23 agenda. TOMA requires that all final action occur in open session, and that any closed session be confined to the narrow categories properly noticed and statutorily authorized. Tex. Gov't Code §§ 551.041, 551.102. The March 9 closed session was cited in part to § 551.072(2)—a real-property provision—for deliberations having nothing to do with real property. The TOMA claim is doubly live, and *de novo* review should restore the state-law foundation for declaratory relief to the analysis.

**OBJECTION 7: The R&R's Irreparable-Harm and Public-Interest Analysis Should Be Reconsidered in Light of the Foregoing Constitutional**

**Violations, the *Elrod* Presumption, and the Public Interest in Effective Governance.**

The R&R notes that because Plaintiff has not established likelihood of success on the merits, the Court need not address the remaining preliminary-injunction factors. **R&R at 20**. Plaintiff objects to the extent the foregoing Objections are sustained on *de novo* review, requiring fresh analysis of the remaining factors.

*Irreparable Harm*. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Fifth Circuit applies the *Elrod* presumption faithfully. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). Independently, Plaintiff has been barred from his elected office on every ordinary working day for more than two months, threatened with arrest for attempting to perform his official duties, forbidden from communicating with the staff he is statutorily required to inspect, publicly subjected to an unauthorized investigation under an extrajudicial gag order, and had his lawful agenda submissions suppressed by his political adversary. He learned of a residential fire in his own city from a constituent, and of the June 11, 2026 EDC meeting only after his own inquiry. These are not harms redressable by money damages at the conclusion of litigation.

*Balance of Equities and Public Interest*. A defendant has no cognizable interest in maintaining an *ultra vires* ordinance. *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 1132. The public of Balcones Heights has a powerful interest in the effective governance of its duly elected Mayor-CEO—returned to office unopposed on May 2, 2026— and in the rule of law that prohibits the Council from arrogating to itself powers the Texas Legislature has vested in the

office of Mayor. The balance of equities and the public interest support preliminary injunctive relief.

**OBJECTION 8: Plaintiff Objects to and Preserves Review of the R&R's Treatment of His Substantive Due Process / *De Facto* Removal Theory.**

Out of an abundance of caution and to preserve appellate review, Plaintiff objects to the R&R's treatment of Count IV (substantive due process) to the extent the R&R applies *Castille v. Port Arthur ISD*, 168 F.4th 240 (5th Cir. 2026), as foreclosing relief on the present record. *Castille* involved a school district administrator who received pre-termination notice, an evidentiary hearing, and an administrative appeal. *Id.* at 253. Plaintiff is a sitting elected official who has received no pre-deprivation process and has been threatened with arrest for performing duties his statutory office requires—conduct that may "extend[] beyond mere violations of state law" to "something more egregious and more extreme," *id.* at 254. Plaintiff preserves this objection for *de novo* review.

## CONCLUSION AND PRAYER

Plaintiff requests that this Court (i) conduct *de novo* review of the objected-to portions of the R&R; (ii) grant Plaintiff leave to submit a short supplemental declaration documenting the post-hearing developments in light of the R&R's "temporary" finding; (iii) reject the R&R's recommendation; and (iv) grant the preliminary injunctive relief requested by Plaintiff at **ECF 2**. In the alternative, Plaintiff requests that the matter be returned to the Magistrate Judge with instructions to apply: (a) Texas Local Government Code §§ 22.072(a) and 51.012; (b) *Houston Community College System v. Wilson*, 595 U.S. 468 (2022); (c) the *Mt. Healthy* "substantial factor" framework rather than the *Nieves* "but-for" framework; and (d) the framework of *Bradshaw v. Salvaggio*, No. SA-20-CV-01168-FB, 2020 WL 8673836 (W.D. Tex. Oct. 28, 202), in light of the post-filing record now before the Court.

Respectfully Submitted,

**GRABLE PLLC**

*/s/Brandon J. Grable*
**Brandon J. Grable**
State Bar No. 24086983
brandon@grable.law
12451 Starcrest Drive, Ste 206
Telephone: 210-963-5297
Facsimile: 210-215-4765
***Attorney for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on the 28th day of May, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Brandon J. Grable*
**Brandon J. Grable**